EMILE GENDREAU & others[1] *vs.* C. K. SMITH AND COMPANY, INCORPORATED, & others[2] (and a companion case[3]). August 20, 1986. *Damages,* Injury to real property, Escape of harmful substance. *Evidence,* Expert opinion. *Practice, Civil,* Verdict, Argument by counsel.

On the defendants' appeal there is no contention that there was insufficient evidence to permit a Superior Court jury to find the defendants negligent

---

[4] The same phrase appeared in the version of § 1 applicable at the time of the discharge hearing.

[1] Jeanette Gendreau, Brian and Barbara Hickey, Arthur J. and Rita M. Caroselli, Jean L. and Pauline L. Clapin, Manuel C. and Ernestine Viera, and Stephen Camara.

[2] Buckley Heating, Inc., and Service Station Attendants, Inc.

[3] Brian and Barbara Hickey against C. K. Smith and Company, Inc., Buckley Heating, Incorporated, and Service Station Attendants, Inc.

in connection with the contamination by gasoline of the properties and well water supplies of the plaintiffs. What is in dispute is the measure of damages applied by the judge on answers to special questions put to the jury, certain evidentiary rulings, and portions of the closing arguments of counsel for the plaintiffs.

1. *The measure of damages.* The jury were asked only two questions with respect to damages.[4] In answer to one, the jury determined the diminution in value of the property of each set of plaintiffs caused by the contamination. In answer to the second question, the jury found an amount representing the cost to provide each set of plaintiffs with a drinkable water supply. In all but one case, the latter amount was less than the former. The judge, believing that he was bound to do so by the holding in *Bousquet* v. *Commonwealth,* 374 Mass. 824, 825 (1978), entered judgment for each set of plaintiffs in the amount of the combined jury findings.

The defendants agreed to the form of the special questions given to the jury. On the question of the reduction in value of the properties, the judge instructed the jury that they were to arrive at damage amounts by considering the fair market value of the properties before and after the contamination. He did not instruct that the jury were to consider the fair market value on the assumption that the properties had been provided a drinkable water supply. There was no objection to the judge's instructions on damages on account of diminution in fair market value. These instructions then became the law of the case. See *Sluskonis* v. *Boston & Me. R.R.,* 299 Mass. 413, 415 (1938); *Markus* v. *Boston Edison Co.,* 317 Mass. 1, 7 (1944). Before judgments entered, the defendants made explicit objection to the entry of judgments which would include damages both for the diminution in market value and for the cost of providing drinkable water, arguing that this would result in duplicative damages. Indeed, the defendants' counsel contended that the proper measure of damages in each case was the amount which the jury found to be the diminution in value of each property.

In answer to the special question and in accordance with the judge's instructions, the jury determined the diminution in fair market value for each property in full, that is, without regard to the effect on fair market value of the provision of a potable water supply. The award of damages in that amount precluded an additional award for the cost of providing potable water.[5] The plaintiffs were made whole, on the theory of the case put to the jury, by the first award. They were entitled to no more. See *Manning* v. *Woodlawn Cemetery Corp.,* 239 Mass. 5, 9 (1921); *Belkus* v. *Brockton,*

---

[4] The jury were not asked to determine damages for the loss of the use of the plaintiffs' properties or for any discomfort or annoyance to them. See Restatement (Second) of Torts § 929(1) (1979).

[5] Although it is not necessary to our disposition of the case, we note that there was no direct or circumstantial evidence which would have permitted the jury to find that the plaintiffs would be responsible for all of the costs which the jury concluded would be necessary to provide drinkable water to their respective properties. Indeed, such evidence as there was tended to show the contrary.

282 Mass. 285, 290-291 (1933); Restatement (Second) of Torts § 929(1) (1979). Contrast *Parker* v. *American Woolen Co.*, 215 Mass. 176, 182 (1913); *Automated Donut Syss., Inc.* v. *Consolidated Rail Corp.*, 12 Mass. App. Ct. 326, 334-335 (1981). We do not read *Bousquet* v. *Commonwealth, supra,* as to the contrary. Implicit in the holding in that case, we think, is a recognition that damages for diminution in the fair market value of land in such cases are to be computed on the basis of such values before and after contamination, taking into account any reasonable measures adopted to prevent, reduce or abate the harm caused. In that event reasonable expenses in connection with curative measures may be an element of damages. Here, however, the jury were not asked to determine the ultimate diminished value, but only the diminution in value assuming a lack of potable water, a figure which established a cap on the allowable damages.

2. *Evidentiary issues.*[6] (a) There was no error in the admission, over the defendants' objections, of the testimony of the plaintiffs' medical expert regarding the adverse health effects of the ingestion of water contaminated by gasoline. The judge explicitly admitted the evidence only on the question whether the plaintiffs' water was drinkable and only as that question related to the values of the plaintiffs' properties. The jury were emphatically instructed on these limitations on the expert's testimony.

(b) Any error in allowing a lengthy hypothetical question of the plaintiffs' real estate expert (because it assumed facts not put in evidence) was harmless. The witness gave the same response to a valid hypothetical question, and on cross-examination she admitted she had not taken into account the questioned assumed facts.

There was no error in the admission of testimony from the expert as to her opinion of the fair market values of the plaintiffs' properties in early 1984 on the assumption that there had been no contamination. The defendants argue that the jury could not properly have determined the diminution in the fair market values of the properties without evidence as to those values before any contamination whatsoever or at a time just prior to the discovery of the contamination by each plaintiff. There was no evidence of the dates of the incipient stages of infiltration; as a practical matter it does not appear that there could have been. The harm to the plaintiffs' properties was ongoing. The plaintiffs are entitled to the full measure of their damages. In the circumstances, it was within the discretion of the judge to admit testimony as to fair market values at a time when the extent of those damages had been substantially established and was no longer speculative. One question to be decided by the jury was the probable current value of each of the properties free of contamination. The expert's opinions were clearly relevant to that question. The weight of those opinions was for the jury. The special verdicts on damages for diminution in fair market values

[6] The testimony of Pasqual J. Bianchi and Gerard D. Blais, Jr, related to the cost of supplying potable water to the plaintiffs' properties. In view of our disposition of the issue of the appropriate measure of damages, we need not consider the defendants' arguments as to error in the admission of testimony of these witnesses.

clearly indicate that the jury were guided by principles appropriate to the case as given to them, as well as by their common sense and experience.

3. *Closing argument.* On appeal, the defendants argue that plaintiffs' counsel made inflammatory and prejudicial remarks during closing arguments by referring to the possible deleterious health effects resulting from use of the contaminated water. As the defendants did not object to these portions of the arguments, we decline to review the matter. See *Rice* v. *James Hanrahan & Sons,* 20 Mass. App. Ct. 701, 712 (1985), and cases cited.

The defendants did object to a rhetorical question posed to the jury concerning whether a young family would buy a house which had a well contaminated with a teratogen — "an element that can cause birth defects, abnormalities." The defendants contend that the argument was improper because there was no evidence that these houses had been offered for sale to families. The argument was fair comment on the issue of the values of the properties, and the judge recognized it as such.

4. *Conclusion.* The judgments are vacated, and new judgments are to be entered awarding each set of plaintiffs the amount found by the jury to constitute the diminution in value of their respective properties. The denial of the defendants' motions for judgment n.o.v. or, in the alternative, for a new trial (Mass.R.Civ.P. 50[b], 365 Mass. 814 [1974]), are affirmed. No party is to have costs of this appeal.

*So ordered.*

*John E. Keenan, Jr.,* for the defendants.
*George A. Fairbanks, III, & Jerald M. Gunner* for the plaintiffs.