STEPHEN W. BISSON, trustee, [1] *vs.* DAVID W. ECK. No. 95-P-979. July 10, 1996. *Hazardous Materials. Massachusetts Oil and Hazardous Material Release Prevention Act. Negligence,* Economic loss. *Real Property,* Environmental damage. *Damages,* Hazardous waste contamination.

In 1985, the plaintiff purchased property located in Norwood from the defendant who, from 1977 to 1982, had used the land for the storage and maintenance of tractor trailer trucks and other vehicles in connection with his trucking business. A few years after purchasing the property, the plaintiff discovered that it was contaminated with hazardous materials, including oil, diesel fuel, and gasoline. He brought this action under G. L. c. 21E, §§ 4 and 5, seeking his cleanup costs and damages for the diminution in the value of the land. The jury awarded him $185,000 as reimbursement for his cleanup costs and $150,000 for damage to the property. Of the numerous issues raised by the defendant on appeal, only one warrants discussion beyond that set out in the plaintiff's brief, viz., whether the verdicts are duplicative. We think not and, therefore, affirm the judgment.

1. *The issue.* General Laws c. 21E, § 4, permits reimbursement to a party who expends money for the assessment, containment, and removal of the contamination caused by another, whereas § 5(*a*)(iii) provides for the recovery of damages to real and personal property incurred by reason of the contamination. See *Guaranty-First Trust Co.* v. *Textron, Inc.,* 416 Mass. 332, 338 (1993). See also *One Wheeler Rd. Assocs.* v. *Foxboro Co.,* 843 F. Supp. 792, 798 (D. Mass. 1994) ("Both sections address contamination, but the remedies given by each are entirely distinct. Section 5 provides for compensation to a plaintiff for a decrease in property value, while section 4 ensures restitution for a person who expends money for cleaning contamination caused by another"). Further, "the appropriate measure of recovery for 'damage to [a property owner's] real or personal property' under G. L. c. 21E, § 5(*a*)(iii), must be determined by reference to common law." *Guaranty-First Trust Co., supra* at 335.

The defendant does not dispute that a diminution in property value can be a proper measure of damages recoverable under § 5(*a*)(iii). See *id.* at 336-337. He argues however, that where a successful cleanup of the property has occurred, a damage award for dimunition in fair market value under § 5(*a*)(iii) is duplicative of the reimbursement provided by § 4. See *Belkus* v. *Brockton,* 282 Mass. 285, 288 (1933); *Guaranty-First Trust Co., supra,* at 337. He views the evidence as allowing for only one conclusion, which, as put by him, is that the "property had been rehabilitated to its precontamination condition, with little likelihood that future cleanup costs would be needed."

2. *The evidence.* There was evidence offered by the plaintiff from which the jury could find that: (1) residual levels of hazardous materials persisted on the property despite the plaintiff's cleanup efforts; (2) there was a likelihood that the hazardous materials had migrated onto neighboring property; and (3) the property would continue to carry a stigma by virtue of market fears associated with ongoing contamination and potential liability for pollution of adjacent properties. The purchase price of the property was $640,000, and the plaintiff's real estate expert testified that the amount of damages attributable to the stigma was $365,000.

[1]Of the D & D Realty Trust.

3. *Discussion.* In support of the damages award, the plaintiff argues that the evidence satisfies the criteria for recovery of damages to property set out in *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 795-798 (3d .Cir. 1994). One of the issues there presented was whether, under Pennsylvania law, a decrease in market value caused by the stigma associated with contamination from hazardous materials was compensable or whether, under Pennsylvania law, diminution of value was a proper measure of damages only where there was permanent physical damage to the property. The court held that "at least where (1) defendants have caused some (temporary) physical damage to plaintiffs' property; (2) plaintiffs demonstrate that repair of this damage will not restore the value of the property to its prior level; and (3) plaintiffs show that there is some ongoing risk to their land, plaintiffs can make out a claim for diminution of value of their property without showing permanent physical damage to the land." *Id.* at 798.

We need not consider whether Massachusetts common law allows for an award of damages for a decrease in market value caused by the stigma associated with contamination from oil or hazardous materials. In the first instance, there is nothing in our case law which *precludes* such an award. See *Bousquet* v. *Commonwealth*, 374 Mass. 824, 825 (1978) (recovery of damages for loss of fair market value in addition to reasonable remedial expenses was upheld where there was no showing that the damages were duplicative). See also *Gendreau* v. *C. K. Smith & Co.*, 22 Mass. App. Ct. 989, 990-991 (1986) ("Implicit in the holding in [*Bousquet*] . . . is a recognition that damages for diminution in the fair market value of land . . . are to be computed on the basis of such values before and after contamination, taking into account any reasonable measures adopted to prevent, reduce or abate the harm caused. In that event reasonable expenses in connection with curative measures may be an element of damages"). Compare *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 871 (1993) (damages for misrepresentation held duplicative of an award for the cost of rehabilitating property where evidence revealed fair market value of property without contamination would have been $125,000 and there was no evidence that value of property "after cleanup would be less than the appraised value of $125,000 merely because the property had previously been contaminated").

Moreover, notwithstanding the fact that the plaintiff had submitted a memorandum of law detailing that damages were being sought on the theory that a "property's value can be affected by the taint arising from contamination . . . an impact that appraisers refer to as a 'stigma,' " the defendant took no objection to the testimony of the plaintiff's expert on those damages or his methodology in arriving at his opinion of the amount of damages attributable to the stigma. Nor did the defendant either request a jury instruction precluding an award of such damages or lodge any objection to the trial judge's instruction to the jury that if remedial measures "did not completely cure the problem and the fair market value of the property was less or diminished due to this prior existing contamination, then the plaintiff would be entitled for [*sic*] diminution in value." Further, there was no objection to or suggestions for improvement upon the trial judge's detailed and emphatic instructions against duplicative damages. In view of these circumstances, we conclude that the defendant is not entitled

to relief from the judgment. See *Gendreau* v. *C. K. Smith & Co.,* 22 Mass. App. Ct. at 990, applying the doctrine of the law of the case.

*Judgment affirmed.*

*Paul Alan Rufo* for the defendant.

*Howard P. Blatchford, Jr.* (*Bruce F. Smith* with him) for the plaintiff.