STEPHEN W. BISSON, trustee,[1] *vs.* DAVID W. ECK & another[2];
STEPHEN W. BISSON, third-party defendant.

Norfolk. October 5, 1999. - December 9, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Practice, Civil,* Counterclaim and cross-claim, Attorney's fees, Costs. *Uniform Commercial Code,* Bulk transfer, Defenses. *Negotiable Instruments,* Note, Defenses, Holder in due course, Shelter doctrine. *Setoff.*

In a civil action, summary judgment was incorrectly entered in favor of the defendant in circumstances in which there remained unresolved material issues of fact. [410-411]

This court concluded that a plaintiff in a civil action was entitled to claim, as a permissive counterclaim under Mass. R. Civ. P. 13 (b), a right of setoff arising out of a separate transaction, and that the validity of the claim was for the trier of fact to determine. [411-412]

This court concluded that whether a party has the rights of a holder in due course is a question to be decided under Massachusetts, not Federal, law. [412-413]

In a civil action, the record on summary judgment did not establish whether a bank was a holder in due course of a certain note such as would give subsequent assignees and transferees derivative shelter from claims. [413-414]

Discussion of the shelter doctrine that protects holders of financial instruments taking from a holder in due course, and discussion of the exceptions to that doctrine applicable to a prior holder who has actual notice of a claim or with whom the original holder has dealt. [414-416]

A party to a claim on a promissory note was not entitled to attorney's fees and costs pursuant to a provision in the note, where the maker was in compliance with his obligations on the note, having paid into escrow. [416]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1995.

A motion for partial summary judgment was heard by *Elizabeth Butler,* J., and motions for assessment of attorney's fees and costs and for entry of separate and final judgment were heard by *Patrick F. Brady,* J.

The Supreme Judicial Court granted an application for direct appellate review.

---

[1]Of D & D Realty Trust.

[2]Virginia M. Blundell. Eck is not a party to this appeal.

*Howard P. Blatchford, Jr. (Bruce F. Smith* with him) for the plaintiff.

*Brian K. Bowen* for Virginia M. Blundell.

GREANEY, J. A judge in the Superior Court granted summary judgment against the plaintiff and in favor of the defendant Virginia M. Blundell. The judge concluded that the plaintiff could not set off a claim against Blundell, who is the holder of a negotiable promissory note given by the plaintiff to Blundell's son-in-law, the defendant David W. Eck (Eck). The setoff concerned a final judgment under G. L. c. 21E (Massachusetts Oil and Hazardous Material Release Prevention Act) held by the plaintiff against Eck. The plaintiff appealed from the grant of summary judgment. Blundell filed a cross appeal. We granted the plaintiff's application for direct appellate review. We conclude that the grant of summary judgment was not proper. We also conclude that Blundell was not entitled to have attorney's fees and costs assessed against the plaintiff. Accordingly, we vacate the portions of the judgment concerning the plaintiff's liability on his note.

We set forth the evidence presented in the summary judgment record in the light most favorable to the plaintiff who opposed Blundell's motion for summary judgment. *BayBank* v. *Bornhofft*, 427 Mass. 571, 573 (1998). In 1985, the plaintiff purchased land in Norwood from Eck. Eck had used the land for the storage and maintenance of tractor trailer trucks and other vehicles in connection with his trucking business. The purchase agreement contained a disclaimer by Eck of representations or warranties concerning the land's condition, but the agreement allowed the plaintiff to rescind the agreement if inspection of the land pursuant to G. L. c. 21E revealed problems. The G. L. c. 21E inspection disclosed problems likely subject to remediation, but the plaintiff went ahead with the purchase. As purchase money security, the plaintiff, as trustee of D & D Realty Trust and individually, delivered to Eck a negotiable promissory note in the amount of $570,000 for a term of twenty years. Full payment of principal under the note is due on May 10, 2005. The plaintiff obligated himself until that date to make quarterly interest payments at an annual rate of ten per cent. The plaintiff's note was secured by a mortgage on the Norwood land.

In 1989, the plaintiff sued Eck, pursuant to G. L. c. 21E, §§ 4 and 5, to recover damages for contamination of the land

by hazardous materials, including oil, diesel fuel, and gasoline. In 1993, a jury awarded the plaintiff damages on his claim under G. L. c. 21E, and a judgment in his favor entered against Eck in the amount of $451,262. The judgment reflected, among other items, damages incurred for cleanup costs as well as damages for diminution in the value of the land. The judgment went on to enjoin Eck from receiving quarterly interest payments under the plaintiff's note, and prevented Eck from accelerating liability on the note's principal, so long as quarterly interest payments were made into escrow. In 1996, the Appeals Court affirmed the judgment. *Bisson* v. *Eck*, 40 Mass. App. Ct. 942 (1996). We denied Eck's application for further appellate review. 423 Mass. 1107 (1996). To date, Eck has not paid any part of the plaintiff's judgment.

In November, 1989, Eck and his wife Lois, who is Blundell's daughter, obtained a $500,000 line of credit from Massachusetts Bank & Trust Company. The loan was evidenced by a note signed by both Ecks that was secured by a second mortgage on their home in Kingston. Assigned as additional security for the Ecks' loan was the plaintiff's note and mortgage from the Norwood land sale. The Ecks defaulted on their loan to Massachusetts Bank & Trust Company, and that bank subsequently failed. The Federal Deposit Insurance Corporation (FDIC) was appointed as the bank's receiver, and the FDIC determined that there was a balance due on the Ecks' note of $226,431.36.

Following these events, Eck alone, sometime in 1994, began negotiating with the FDIC to repurchase the loan made by him and his wife. In 1994, the FDIC wrote to Eck acknowledging his offer of $100,000 cash to purchase the loan (and, along with it, the plaintiff's note and mortgage).

In November, 1994, Banc One Management and Consulting Corporation (Banc One), the servicing agent for the FDIC in the latter's capacity as receiver for the failed Massachusetts Bank & Trust Company, informed Eck that the FDIC would accept $200,000 for the purchase of the Ecks' note and all collateral securing it (which included the plaintiff's note and mortgage). The Ecks both countersigned this offer. At this point, the Ecks did not identify any third party as the ultimate purchaser in the transaction. Shortly thereafter, however, Eck made arrangements with Banc One to transfer the Ecks' loan, along with the plaintiff's note and mortgage, to Blundell. The transfer was thereafter made to Blundell in keeping with Eck's

express instructions. Blundell asserts that she paid full value for the purchase of her daughter's and son-in-law's note and mortgage, as well as for the plaintiff's note and mortgage. The plaintiff, however, uncovered two treasurer checks payable to the FDIC's transfer agent that were drawn on accounts traceable back to Eck. The transaction that assigned the plaintiff's note to Blundell led to the discharge of the mortgage held by the FDIC on the Ecks' home in Kingston.

The circumstances of Blundell's acquisition of the plaintiff's note are supplemented by evidence that Eck may have used Blundell to shelter three parcels of beachfront property in the Virgin Islands from the reach of the plaintiff's G. L. c. 21E judgment. That evidence tends to indicate that Eck placed the land in a trust, ostensibly for Blundell's benefit, while he retained complete control over the trust and its assets.

The events described above led to the present litigation, which we now summarize. The plaintiff brought an action against Eck and Blundell, seeking a declaration under G. L. c. 231A that, because of her knowledge and close involvement with Eck, Blundell "is not a holder in due course of [the plaintiff's] [n]ote and . . . [he] has a right to set-off or to assert any defenses he has against Eck against any payment that may be or become due to Blundell under [his] [n]ote." Blundell filed an answer and counterclaim seeking to foreclose on the plaintiff's mortgage because of his alleged default on his note to Eck. There then followed a third-party complaint, and other pleadings by Blundell, the upshot of which sought a judgment for damages and attorney's fees and costs against the plaintiff, and against Eck (but not against her daughter).

Blundell moved for summary judgment. A judge in the Superior Court allowed her motion. Following summary judgment, another judge in the Superior Court ordered the entry of judgment in Blundell's favor. The judgment (a) held that the plaintiff was liable to Blundell; (b) ordered the payment of damages by the plaintiff to Blundell; (c) directed that the interest monies on the plaintiff's note held in escrow be paid over to Blundell, and that the plaintiff make future interest payments to her; and (d) awarded attorney's fees and costs to Blundell against the plaintiff. The judgment also granted Blundell a judgment (by default) on her cross claim filed against Eck alone on the note given by him and his wife to the Massachusetts Bank & Trust Company. The plaintiff appealed, and Blundell filed a

cross appeal on the ground that she has not been awarded all the attorney's fees and costs due her from the plaintiff. We shall first discuss the plaintiff's theory of the case and then proceed to discuss Blundell's theories why she should be considered free from the plaintiff's claim of setoff.

1. The plaintiff argues here, as he did in the Superior Court, that there are triable issues of material fact as to Blundell's status. He characterizes the relationship between Blundell and her son-in-law, Eck, in various ways, asserting that, in the transaction by which Blundell acquired his note, she was essentially Eck's alter ego; that Eck and Blundell acted in an agency relationship; and that, in any event, Blundell was so closely connected to Eck in the transaction that she is charged with Eck's responsibility for the plaintiff's judgment. The thrust of the plaintiff's argument is that a trier of fact permissibly could conclude that Blundell cannot assert the holder in due course status or rights under the Uniform Commercial Code[3] or seek protection from setoff for any other reason. The plaintiff asserts that a trier of fact could decide that he is entitled to set off the G. L. c. 21E judgment against Eck to reduce his liability on his transferred note.

Material questions of fact exist as to Blundell's status that need to be resolved by a trier of fact before the rights of the parties are finally determined. The plaintiff has submitted evidence which, when considered with reasonable inferences that could be drawn therefrom, could warrant findings that (a) Eck's rights on the plaintiff's note were subject to the plaintiff's claim against Eck on the G. L. c. 21E judgment; (b) Eck offered to repurchase from the FDIC the note signed by him and his wife in connection with the loan given to the Ecks by the Massachusetts Bank & Trust Company, together with the security for the note which included a mortgage on the Ecks' home and the plaintiff's note (and mortgage); (c) Eck knew, when the FDIC accepted (through its servicing agent) Eck's offer to repurchase, that his reacquisition of the plaintiff's note would allow the G. L. c. 21E judgment to be set off; (d) Eck arranged with his mother-in-law, Blundell (or vice versa), to have the Ecks' loan and the plaintiff's note transferred to Blundell, for less than full value, in order to avoid the plaintiff's claim of

---

[3]The circumstances are governed by the provisions of the Uniform Commercial Code in effect on May 10, 1985, when the plaintiff's note was made. See generally St. 1957, c. 765, § 1.

setoff; and, (e) Blundell knew, or should have been aware, of the operative facts, and participated with Eck to circumvent the plaintiff's rights in order to benefit Eck and her daughter. The plaintiff's summary judgment showing was supported by additional evidence that would warrant findings that Eck and Blundell acted pursuant to a common scheme to put property owned by Eck in the Virgin Islands beyond the plaintiff's reach.

Blundell concedes in her brief that, "[d]ue to the likely existence of disputed facts . . . [she] didn't assert . . . [the] status [of a holder in due course] under [G. L. c. 106, §] 3-302" in the summary judgment proceedings.[4] She maintains, however, that the plaintiff's claim of setoff cannot constitute a defense to his note. Alternatively, Blundell argues that she is protected against the plaintiff's claim because she has the rights accorded a holder in due course under the so-called Federal holder in due course doctrine and by reason of the shelter provision in G. L. c. 106, § 3-201 (1), inserted by St. 1957, c. 765, § 1. We turn first to Blundell's contention that the plaintiff cannot invoke a right of setoff.

We reject the argument that the plaintiff cannot set off his G. L. c. 21E judgment against Blundell as the holder of his note because the judgment did not pertain to the transaction that gave rise to the note. Permissive counterclaims are permitted by Mass. R. Civ. P. 13 (b), 365 Mass. 758 (1974), and such counterclaims by their nature do not have to arise out of the transaction that is the basis of the main claim. See *PGR Mgt. Co., Health Props.* v. *Credle*, 427 Mass. 636, 639 (1998). If a trier of fact determines that Blundell acted in a legally significant way, on behalf of, or in concert with, Eck, and therefore should be charged with Eck's knowledge of, and responsibility for, the plaintiff's judgment, then the judgment can be asserted against Blundell.[5] As one authority on the Uniform Commercial Code has stated: "The obligor should not

---

[4]The fact that Blundell did not assert that she was a holder in due course in her own right does not preclude her from making that assertion when the case is remanded to the Superior Court for trial.

[5]The record also raises triable issues whether the setoff does in fact arise out of the sale of the land that produced the plaintiff's note. In such a case, Blundell, if she is found not to be a holder in due course, could be subject to setoff without the necessity of finding her to have acted as Eck's alter ego or in a common scheme with him. The plaintiff appears to argue that, by reason of the G. L. c. 21E judgment, there has been a failure of consideration at the

be deprived of the right to raise a setoff to the amount due on the instrument simply because the instrument has subsequently been assigned. Such a rule enables a holder to deny the obligor his right to the setoff by transferring the instrument to a friend or relative. If the party against whom the obligor had the right of setoff becomes insolvent, the friend can still recover against the obligor who has lost his ability to recover from the original holder." 4 W.D. Hawkland & L. Lawrence, Uniform Commercial Code Series § 3-306:5, at 518 (1999).

We now take up Blundell's arguments that she has the rights of a holder in due course under the so-called Federal holder in due course doctrine as well as by reason of the shelter provision stated in G. L. c. 106, § 3-201 (1). Neither ground operates, as matter of law, to protect Blundell.

The so-called Federal holder in due course doctrine stemmed from the notion that a receiver like the FDIC, as matter of Federal common law, has a complete defense to State law claims on instruments acquired by the receiver in connection with the takeover of a failed financial institution. See *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1350 (1st Cir. 1992).

In *O'Melveny & Myers* v. *Federal Deposit Ins. Corp.*, 512 U.S. 79, 86 (1994) (*O'Melveny*), quoting *Federal Deposit Ins. Corp.* v. *O'Melveny & Meyers*, 969 F.2d 744, 757 (9th Cir. 1992), the United States Supreme Court held that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183, requires the FDIC to " 'step[] into the shoes' of the failed [institution] . . . [and] [t]hereafter . . . 'any defense good against the original party is good against the receiver.' " The receiver is required to "work out its claims under state law, except where some provision in . . . FIRREA provides otherwise. To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *O'Melveny, supra* at 87. Since the decision in the *O'Melveny* case, courts that have dealt with the issue have concluded that questions concerning holder in due course status

heart of the sale which reduces his liability on the note in whole or in part. Blundell, among other considerations, maintains that, in view of the plaintiff's consummation of the sale without the receipt of warranties or representations, and his choice not to exercise a right of recission, the G. L. c. 21E judgment cannot be connected to the original transaction. It could be argued that G. L. c. 21E superimposed on the land sale a statutory obligation which was in effect inherent in the transaction and unwaivable. Because the case must be remanded to the Superior Court, the issues raised by this aspect of the dispute should be examined, if necessary.

concern only matters of State law. See *DiVall Insured Income Fund Ltd. Partnership* v. *Boatmen's First Nat'l Bank,* 69 F.3d 1398, 1402-1403 (8th Cir. 1995) ("Accordingly, we hold that *O'Melveny* removes . . . the federal holder in due course doctrine . . . . [T]he holder in due course issue must be decided under state law"); *Calaska Partners Ltd.* v. *Corson,* 672 A.2d 1099, 1103 (Me. 1996) (holding that holder in due course status is solely matter of State law). See also *Federal Deposit Ins. Corp.* v. *Houde,* 90 F.3d 600, 605 n.5 (1st Cir. 1996) ("We note that the continuing viability of the federal holder in due course doctrine is questionable"). We agree with these decisions. Blundell's claim that she has the rights of a holder in due course is to be decided under Massachusetts law.[6]

Blundell also argues that, as transferee of the FDIC, which she says was a holder in due course, she is protected under G. L. c. 106, § 3-201 (1), inserted by St. 1957, c. 765, § 1, the shelter provision that states that "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." The FDIC cannot be a holder in due course in its own right because the FDIC acquired the plaintiff's note as part of a bulk transfer of the assets of the Massachusetts Bank & Trust Company that was not made in the ordinary course of the latter's business. See G. L. c. 106, § 3-302 (3) (*c*), inserted by

---

[6]We deal here with two other issues raised by Blundell. We reject her claim that she is protected from the plaintiff's claim under the so-called *D'Oench* doctrine, or by 12 U.S.C. § 1823(e) (1994). In *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.,* 315 U.S. 447, 460-461 (1942), the United States Supreme Court created a Federal doctrine of equitable estoppel preventing a borrower from using a "secret agreement" with the original lender as a defense to the FDIC's demand for payment. The statutory codification of the doctrine, 12 U.S.C. § 1823(e), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183, bars anyone from asserting against the FDIC any "agreement" that is not in writing and is not properly recorded in the records of the bank. See *Federal Deposit Ins. Corp.* v. *LeBlanc,* 85 F.3d 815, 821 (1st Cir. 1996). Assuming the continued validity of the *D'Oench* doctrine, the doctrine and its codification in § 1823(e) only protect the FDIC from claims or defenses based on a secret "agreement." There is nothing in this record to show the existence of a secret agreement.

Blundell is also incorrect that the plaintiff is barred from asserting his set-off claim because he failed to exhaust administrative remedies under FIR-REA, 12 U.S.C. § 1821(d)(13)(D) (1994). Bisson's set-off claim is not a "claim or action for payment from," nor does he seek "a determination of rights with respect to[] the assets" of a bank for which the FDIC has been made a receiver. *Bolduc* v. *Beal Bank,* 167 F.3d 667, 671 (1st Cir. 1999).

St. 1957, c. 765, § 1; *Calaska Partners Ltd.* v. *Corson, supra* at 1104 (holder in due course status is not conferred when financial instruments are transferred in bulk to FDIC); 4 W.D. Hawkland & L. Lawrence, *supra* at § 3-302:6, at 409 (purchaser denied holder in due course status where financial instruments transferred in bulk and not in the regular course of transferor's business).

Blundell goes on to assert, however, that the Massachusetts Bank & Trust Company was a holder in due course, and the FDIC acquired that status derivatively from the latter. See *Federal Deposit Ins. Corp.* v. *Houde, supra* at 605; *New Bedford Inst. for Sav.* v. *Gildroy*, 36 Mass. App. Ct. 647, 651 n.5 (1994); 2 U.L.A. prior art. 3, § 3-302 official comment 3, at 488 (Master ed. 1991); 4 W.D. Hawkland & L. Lawrence, *supra* at § 3-201:8, at 300, § 3-302:6, at 411. Thus, Blundell concludes, she is protected because of the FDIC's derivative shelter. See 2 U.L.A. prior art. 3, § 3-201 official comment 1, *supra* at 422. 4 W.D. Hawkland & L. Lawrence, *supra* at § 3-201:2, at 287.

The summary judgment record does not establish one way or the other whether the Massachusetts Bank & Trust Company was a holder in due course. That issue will have to be considered in the Superior Court. More pertinently, the shelter doctrine, whether directly or derivatively applied, has an exception for "a prior holder [who] had notice of a defense or claim against [the instrument]." G. L. c. 106, § 3-201 (1). Such a holder "cannot improve his position by taking from a later holder in due course." *Id.*

This exception is designed to prevent misuse of the shelter provision, and it may have applicability to this case where the circumstances call for careful examination of the disputed transfer. As succinctly stated by one court: "The exclusion from the shelter principle of one who, having had notice of prior claims, takes back an instrument from a holder in due course rests upon sound principle and simple logic. Operation of the shelter principle in favor of such a person would defeat the purpose of subjecting him to defenses of the maker. Without the exception to the shelter principle, one not a holder in due course, by a transfer and an agreement to repurchase, could readily avoid the limitations under which he held the instrument in the first place." *Rozen* v. *North Carolina Nat'l Bank*, 588 F.2d 83, 86 (4th Cir. 1978). See 4 W.D. Hawkland & L. Lawrence, *supra*

at § 3-201:5, at 293 ("[I]f a party . . . with notice of a claim or defense has encouraged the transferee to purchase the instrument, the shelter provision should be inapplicable"); 2 T.D. Crandall, M.J. Herbert & L. Lawrence, Uniform Commercial Code § 16.12.1, at 105 (1996) ("Courts should broadly interpret the concept of 'prior holder' in order to prevent circumvention of this exception. For example, where a prior holder as to whom the exception would be applicable requests a co-conspirator, who was not a prior holder, to purchase the instrument, the co-conspirator should also be denied the benefit of the shelter provision"). Once again, there needs to be further inquiry as to whether the transfer of the plaintiff's note to Blundell was orchestrated by Eck and Blundell in order to avoid the G. L. c. 21E judgment being set off against Eck.[7]

Along the same vein, there is another reason that may deny Blundell the rights afforded one who takes an instrument under the shelter doctrine. Derivative rights under the shelter doctrine are "subject to the defenses of any party to the instrument with whom the [original] holder has *dealt*" (emphasis added). *New Bedford Inst. for Sav.* v. *Gildroy, supra* at 654, quoting *Travi Constr. Corp.* v. *First Bristol County Nat'l Bank,* 10 Mass. App. Ct. 32, 37 (1980). See G. L. c. 106, § 3-305 (2). The *New Bedford* case is the only Massachusetts decision which has construed the term "dealt" in G. L. c. 106, § 3-305 (2). The Appeals Court interpreted the "dealt [with]" language as requiring "a direct, face to face, personal interchange." *Id.*

In reaching this conclusion, the Appeals Court relied on treatises and case law from other jurisdictions that have as their underlying philosophy "that an *innocent* person who receives commercial paper in *good faith* and for value from one who has obtained it by a misrepresentation or fraud should be protected and allowed to enforce the obligation" (emphasis added). *Id.* at 655. That "philosophy," with which we generally agree, simply does not fit the facts of this case, if the plaintiff's allegations

---

[7]Although the plaintiff's judgment entered after Eck had transferred the note, the jury in the G. L. c. 21E lawsuit found that Eck "misrepresented the condition of the subject property to the plaintiff *prior* to [May 10, 1985]," the date of the note's execution (emphasis added). Eck had some prior "notice" that the plaintiff had a possible setoff or defense when Eck took the note. See G. L. c. 106, § 1-201 (25) (*c*), inserted by St. 1957, c. 765, § 1.

prove true.[8] See *A.I. Trade Fin., Inc.* v. *Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 838-839 (2d Cir. 1994) ("deal [with]" provision mirrors § 3-302 [1] analysis of good faith and should not be read literally). Blundell could be found by a trier of fact not to be an "innocent" party, if she combined with Eck in his efforts to avoid the plaintiff's setoff.

2. Following the allowance of summary judgment, Blundell moved for an award of attorney's fees and costs against the plaintiff pursuant to a provision in his note that allowed for such an award in the event that "suit is brought to collect [the] [n]ote." Blundell was allowed only a portion of her requested attorney's fees and costs.

We agree with the plaintiff that attorney's fees and costs should not have been awarded. The plaintiff continued to make timely interest payments on the note in escrow, as called for by the judgment in the G. L. c. 21E action. Blundell was not entitled to attorney's fees and costs because the plaintiff was in compliance with his obligations under the note.[9]

3. Paragraphs 1, 2, and 4 of the judgment entered in the Superior Court on July 31, 1998, are vacated. There are to be further proceedings in the Superior Court in accordance with this opinion on the issues raised by Count II of the plaintiff's complaint and Blundell's responses thereto. Until a final judgment is entered on Count II, the plaintiff is to continue making the quarterly payments of interest due on his note to Eck in escrow.

*So ordered.*

---

[8]Blundell acknowledges that "[t]his requirement for substantial personal dealings and involvement in the transaction giving rise to the note, . . . in order to subject even a holder in due course to certain qualified personal defenses of the maker . . . is essentially a variation of the requirement of taking without notice of any defenses under [§] 3-302."

[9]In view of our conclusion that Blundell is not entitled to any attorney's fees or costs, we need not address her issue on cross appeal that the judge erred in awarding her only a portion of her requested attorney's fees and costs.