Eck *v.* Kellem.

DAVID W. ECK & another[1] *vs.* LAWRENCE A. KELLEM
& another.[2]

No. 99-P-86.

Suffolk. January 12, 2001. - June 13, 2001.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*Limitations, Statute of. Negligence,* Attorney at law. *Attorney at Law,* Attorney-client relationship, Malpractice, Negligence.

Statutes of limitations applicable to claims for legal malpractice arising from an attorney's work in the preparation of a purchase and sale agreement in a prior action did not begin to run upon the commencement of the prior action in June, 1989, but, rather, when a judgment in the action entered on January 13, 1994, where the latter event first put the plaintiff on notice that he suffered appreciable harm due to the attorney's negligent drafting of the purchase and sale agreement; consequently, the defendant's motion for summary judgment on the ground that the plaintiff's claims were barred by the applicable statutes of limitation was properly denied. [853-856]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1996.

A motion for summary judgment was heard by *Barbara A. Dortch-Okara,* J.

A proceeding for interlocutory review was heard by *Jacobs,* J.

*Scott D. Burke* for Lawrence A. Kellem.

*Kenneth B. Walton* for Blake J. Godbout.

*Valeriano Diviacchi* for the plaintiffs.

GILLERMAN, J. Eleven years after the plaintiffs (Ecks) sold certain Massachusetts real estate owned by them (property) to Stephen W. Bisson (Bisson), they commenced this action in the Superior Court for legal malpractice. The Ecks sought to recoup

---

[1]Lois Eck, wife of the plaintiff David W. Eck.
[2]Blake J. Godbout.

damages suffered in a prior action brought by Bisson against David W. Eck for misrepresentations in connection with the sale of the property and for violations of G. L. c. 21E. The Ecks' claims against the defendant Kellem, an attorney, arose out of Kellem's work in the preparation of the underlying purchase and sale agreement (sale agreement).[3]

Kellem brought forward a motion for summary judgment on the ground that the Ecks' claims were barred by the applicable statutes of limitations. The motion was denied. A single justice of this court granted Kellem leave to file this interlocutory appeal from the order denying his motion for summary judgment. We affirm.

*Facts.* We recite the facts drawn from the record appendix, describing them, when appropriate, in the light most favorable to the Ecks, the parties opposing the motion for summary judgment. See Mass.R.Civ.P. 56, 365 Mass. 824 (1974); *Murphy* v. *Smith*, 411 Mass. 133, 134 (1991).

In or about February, 1985, David W. Eck (Eck) retained Attorney Kellem to negotiate and draft the agreement for the sale of the property to Bisson. Eck was concerned about his liability for hazardous waste contamination on the property, and instructed Kellem to include a provision in the sale agreement that would protect him from any future claims by Bisson under G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act.[4] Kellem gave Eck the necessary assurances and drafted the sale agreement, which Bisson and Eck executed on March 23, 1985. The transaction was subsequently consummated.

Sometime in 1989, Eck and Kellem had a falling out, in consequence of which Eck brought his first legal malpractice claim against Kellem. That action is apart from Eck's malpractice claim against Kellem involved in this appeal.

---

[3]The claims against Godbout are not involved in this appeal, which comes to this court only on the denial of Kellem's motion for summary judgment.

[4]General Laws c. 21E, § 4, provides for reimbursement by a liable party to a party who expends money for the assessment, containment, and removal of contamination; section 5(*a*) provides for the recovery of damages to the property by reason of the contamination. See generally *One Wheeler Rd. Assocs.* v. *Foxboro Co.*, 843 F. Supp. 792, 798 (D. Mass. 1994); *Black* v. *Coastal Oil New England, Inc.*, 45 Mass. App. Ct. 461 (1998).

On June 5, 1989 — after Eck had sued Kellem the first time — Bisson sued Eck to recover damages resulting from hazardous materials found on the property sold to Bisson in 1985 (Bisson suit). Eck rejected Kellem as his defense attorney because Kellem would be a witness in the litigation. Instead, he retained Attorney Blake J. Godbout.

Godbout's affidavit states that, in defending the Bisson suit, he and Eck relied on Kellem's legal opinion "that Mr. Eck was protected against any Chapter 21E liability in the Bisson case." On June 16, 1993, Kellem testified for Eck at the trial. Kellem had been brought into the suit at the "11th hour," according to Eck; there had been no previous conversation directly between Eck and Kellem.

On June 18, 1993, in answers to special verdict questions, the jury found that Bisson had not relied on, and had not been damaged by, Eck's misrepresentations regarding the condition of the property. However, the jury found that Eck was liable to Bisson under c. 21E in the amount of $185,000 as reimbursement for cleanup costs and $150,000 for diminution in the value of the property as a result of Eck's release of hazardous materials. Judgment entered thereon. We affirmed the judgment on July 10, 1996. See Bisson v. Eck, 40 Mass. App. Ct. 942, 943-944 (1996).

On June 6, 1996, Eck brought this complaint against Kellem and Godbout, later amending it to include his wife as a plaintiff. The complaint against Kellem contained counts for breach of fiduciary duty (Count I), attorney malpractice (Count II), unfair trade practices under G. L. c. 93A (Count III), and negligent infliction of emotional distress (Count IV).

Following various pleadings of the parties which are of no consequence to this appeal, Kellem, on June 10, 1998, filed a motion for summary judgment on the ground that the Ecks' claims were barred by the three-year statute of limitations applicable to Counts I, II, and IV, see G. L. c. 260, § 4, and by the four-year statute of limitations for c. 93A claims, applicable to Count III, see G. L. c. 260, § 5A.[5]

A judge of the Superior Court denied Kellem's motion on the

---

[5]General Laws c. 260, § 4, as amended through St. 1986, c. 351, § 29, provides in relevant part that "[a]ctions of . . . tort for malpractice, error or

ground that Eck did not have notice that the provisions of the sale agreement were negligently drafted, and caused him harm, until judgment entered against Eck on Bisson's c. 21E claim.

Kellem argues that the statutes of limitations began to run in June of 1989 when the Bisson suit was entered, and that all the claims against him are time-barred because Eck did not file the present action until June 6, 1996. The Ecks, on the other hand, argue in essence that the statute of limitations began to run on January 13, 1994, when judgment entered in Bisson's favor, because that event put Eck on notice that he suffered appreciable harm due to Kellem's negligent drafting of the sale agreement. Alternatively, they argue the doctrine of continuing representation. See, e.g., *Murphy* v. *Smith*, 411 Mass. 133, 137-138 (1991).[6]

*Discussion.* In *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 208 (1990), the court summarized the conditions generally that must be satisfied to start the statute of limitations running: "[W]e . . . require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." There is no requirement that the plaintiff have notice of a breach of duty by the defendant, *ibid.*, but there must be notice of a causal relationship between the harmful event attributed to the defendant (whose negligence we may assume, see note 6, *supra*) and the harm suffered by the plaintiff. See *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 218 (1990) ("Notice here refers not to discovery of every fact necessary to prevail on the claim, but rather to discovery of the plaintiff's injury as causally connected to the defendant's negligence").

The question, then, is whether it was the commencement of the Bisson suit, or the judgment therein, that was the first event reasonably likely to put Eck on notice that Kellem's sale agreement may have caused his injury from the Bisson suit. "The ac-

---

mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues." Section 5A uses similar language in establishing a four year limitation period for a c. 93A claim.

[6]Kellem, solely for the purpose of his motion, conceded his negligence, expressly reserving the right to introduce expert testimony at any trial of this action.

crual dates of the c. 93A claims are established by the same principles as govern the determination of the underlying actions." *Hanson Hous. Authy.* v. *Dryvit Sys., Inc.*, 29 Mass. App. Ct. 440, 448 (1990). See *Bowen* v. *Eli Lilly & Co., supra* at 207 ("The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury"). See also *Hendrickson* v. *Sears*, 365 Mass. 83, 89 (1974) ("a cause of action accrues on the happening of an event likely to put the plaintiff on notice").

While cases such as *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985), hold that the statute of limitations begins to run when legal expenses are first incurred while defending a suit brought as a result of the defendant's negligence, see also *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc., supra* at 219, this case does not fall within that rule.

Godbout's affidavit reveals, as we have noted, Kellem's insistence, in his conversations with Godbout, that the sale agreement would protect Eck against any c. 21E claim asserted by Bisson. Further, Kellem persuaded both Eck and Godbout himself that the sale agreement would perform exactly as Kellem had promised Eck.[7]

That Godbout and Eck were so persuaded may reasonably be inferred — favorably to Eck — from the fact that Godbout did not bring in Kellem as a third-party defendant under Mass.R. Civ.P. 14, as amended, 385 Mass. 1216 (1982), see *Maddocks* v. *Ricker*, 403 Mass. 592, 601 (1988), nor did he give Kellem notice to come in and defend Bisson's c. 21E claim. See *Fireside Motors, Inc.* v. *Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 368 (1985) (plaintiff, sued by a third party, claimed that defendant was answerable to the plaintiff, and gave notice that if the defendant did not come in and defend the plaintiff, the defendant "would be bound by any determination of fact common to the two litigations"). Instead, Godbout states that his

---

[7]Godbout's affidavit states, "Both Eck and I relied on Mr. Kellem's legal opinion and advice in defending against the allegations made by Bisson in his complaint."

strategy was to rely on Kellem's opinion that the sale agreement insulated Eck against Bisson's claim.

There is also the fundamental fact that Eck engaged Godbout to defend him in the Bisson suit. Because Eck was "a person seeking professional assistance[, he had the] right to repose confidence in the professional[] ability and good faith [of Godbout]." *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 58 (1987), quoting from *Greene* v. *Greene*, 56 N.Y.2d 86, 94 (1982). See *Spilios* v. *Cohen*, 38 Mass. App. Ct. 338, 341 (1995).[8]

Godbout's tactical decision to rely on Kellem implicitly asserted — and Eck could reasonably have understood Godbout to mean — that the Bisson suit was frivolous, that the sale agreement would provide the necessary protection that Kellem had warranted, and that it would be unnecessary and inappropriate to bring Kellem into the Bisson suit.

These facts bring the case close to the doctrine of continuing representation. See *Cantu* v. *St. Paul Cos.*, *supra* at 58 ("the statute of limitations may be tolled while the defendant attorney continues to represent the plaintiff"). That doctrine rests on the attorney-client relationship, which justifies the client in placing his trust and confidence in the attorney.

While Kellem was not Eck's attorney in the Bisson suit, and the Ecks do not claim it was Godbout's negligence in litigating the effect of the sale agreement that caused Eck's injury,[9] Godbout was aligned entirely with Kellem's legal position. Eck had every good reason to accept, trust, and rely on the Kellem/Godbout position that Eck was not exposed to c. 21E liability when Bisson commenced his action against Eck.

Whether, in fact, Kellem was negligent in the preparation of the sale agreement had to await the outcome of the Bisson suit: until that time it could not be said that Eck suffered any cognizable harm. See *Spilios* v. *Cohen*, *supra* at 339-340 (plaintiff's

---

[8]Both the *Cantu* and *Spilios* opinions were concerned with the doctrine of continuing representation as a reason for tolling the statute of limitations. The quotation appearing in the text provides the foundation for that doctrine, and is a statement of general applicability.

[9]The Ecks' claims against Godbout rest entirely on the allegation that he was negligent in the Bisson suit by not securing expert testimony that the property was not contaminated and that Eck's use of the property was not the cause of any contamination.

attorney refused to accept a settlement offer the plaintiff said should be accepted; held, because it was not possible to determine whether there was legal malpractice until the judge's decision was announced, the statute of limitations did not begin to run until that time).

We conclude that on this record the statutes of limitations did not begin to run upon the commencement of the Bisson suit; rather, they began to run when the judgment entered in that action on January 13, 1994. For that reason we affirm the denial of Kellem's motion for summary judgment.

This case is remanded to the Superior Court for further proceedings.

*So ordered.*