MICHAEL FRANKSTON *vs.* BRACKETT B. DENNISTON, THIRD,
& another.[1]

No. 07-P-741.

Middlesex. September 9, 2008. - June 5, 2009.

Present: BERRY, TRAINOR, & FECTEAU, JJ.

*Attorney at Law,* Malpractice. *Limitations, Statute of.*

A Superior Court judge properly dismissed a civil action (filed in 2004) alleg-
ing malpractice against two attorneys, on the ground that the complaint
was filed beyond the three-year statute of limitations, and the plaintiff
should have discovered the purported malpractice no later than 1995,
where there was no merit to the plaintiff's contentions that he did not
discover the attorneys' malpractice and, therefore, had no duty of inquiry
[373-374]; that he did not know he had suffered appreciable harm from
their malpractice [374-375]; that the notice and discovery requirements
should have been deemed suspended pending the outcome of a separate
appellate disposition [375-377]; or that the attorneys continued to represent
the plaintiff [377].

CIVIL ACTION commenced in the Superior Court Department on
September 22, 2004.

The case was heard by *Nonnie S. Burnes,* J., on motions for
judgment on the pleadings, and motions for leave to file a second
amended complaint, to alter or amend the judgment, and for
reconsideration were also heard by her.

*David C. Kravitz (James J. Marcellino* with him) for the
plaintiff.

*John C. Englander* for Brackett B. Denniston, III.

*Edward T. Hinchey (Myles W. McDonough* with him) for
Dennis M. Perluss.

BERRY, J. The plaintiff, Michael Frankston, appeals from the
dismissal of his amended complaint against his former attorneys,

[1]Dennis M. Perluss.

Brackett B. Denniston, III, and Dennis M. Perluss, on the basis of the statute of limitations. A Superior Court judge allowed the defendants' motions for judgment on the pleadings, Mass.R. Civ.P. 12(c), 365 Mass. 754 (1974), ruling that the complaint was filed beyond the three-year statute of limitations set forth in G. L. c. 260, § 4, and that Frankston should have discovered the alleged legal malpractice more than three years before the commencement of this action in 2004. We affirm.[2]

1. *Background.* We take the facts from Frankston's amended complaint.[3] In 1986, Frankston and five other individuals purchased shares of stock in Innovative Information Systems (IIS), a company controlled by one of the investors, Harry Kurtzman. In 1987, Frankston entered into a partnership with the same five individuals (collectively, the "partners") to purchase, in varying amounts, at different times, and for different prices, shares of stock in Anchor Growth Corporation (Anchor), with the understanding that Anchor would later merge with IIS. On February 27, 1987, Anchor and IIS merged into a new company known as Aura Systems, Inc. (Aura), and the Anchor stock and the premerger IIS stock became Aura stock.

It was planned and agreed that, after the merger, the partners would sell Aura stock, divide the profits equally, and lend the stock profits to Aura as needed. As partial repayment for these loans to Aura, it was further the agreement that the partners would each receive 40,000 shares of Aura stock from a proposed future private stock-placement offering. As we shall set forth in greater detail herein, this arrangement may be characterized as a distribution of stock-pool profits and lies at the core of Frankston's claims that there was legal malpractice when the defendant attorneys failed to file a complaint on Frankston's stock-pool claims and failed to warn about the statute of limitations on the right to bring such a stock-pool related complaint.

Pursuant to the partners' agreement and at Kurtzman's request, following the merger Frankston began selling stock shares and

---

[2]The plaintiff also appeals from two postjudgment motions for reconsideration that do not require separate discussion.

[3]We do not include facts alleged in Frankston's proposed second amended complaint, as his motion for leave to amend was denied, a ruling we do not disturb on appeal. See note 10, *infra.*

lending the profits back to Aura. However, Frankston subsequently became dissatisfied with the partners' management of Aura, resigned from Aura's board of directors, and sold the remainder of his Aura stock.

In 1989, in connection with the planned private placement of Aura stock, Aura filed documents with the Federal Securities and Exchange Commission (SEC) which became publicly available. Among the public documents was a form showing that the partners each received 48,000 shares of Aura stock as part of the private placement, which indicated that each of the five partners had received the partner's own 40,000 shares, plus one-fifth of the 40,000 shares that had been promised to Frankston as a part of the private placement. The documents also indicated that Aura had repaid all the partners' loans, even though Frankston had not been repaid. As previously noted, Frankston was aware that Aura planned on a private placement and the sale of a large amount of stock to private investors. However, Frankston maintains that he never received the form detailing the private-placement transactions among the partners. In any event, Frankston did not receive either his 40,000 shares of Aura stock or repayment of the amounts he had lent to Aura as originally agreed by the partners and planned for under the stock-pool arrangement.

a. *Massachusetts Federal collection action.* On March 13, 1991, Attorney Denniston filed a complaint on Frankston's behalf in the United States District Court for the District of Massachusetts to collect the monies Frankston had lent to Aura as detailed in his account statement. Frankston also wanted Denniston to pursue a claim for amounts owed under the stock-pool agreement. Denniston declined to file such a complaint, informing Frankston that it was his legal opinion that the stock-pool arrangement was not lawful under applicable securities statutes and regulations. When he later became cocounsel, Attorney Perluss also refused to pursue a stock-pool claim.[4] The attorneys did not warn Frankston that any claim related to the stock-pool arrangement might expire based on the applicable statute of limitations.

---

[4]Upon Denniston's recommendation Attorney Perluss had been engaged as local counsel in California in connection with the Aura partners' motion to transfer the Massachusetts Federal case to California. See part 1.b.

In late 1992, Frankston learned, through documents produced in other litigation, that the partners had distributed his 40,000 Aura shares among themselves — these shares, of course, were involved in the stock-pool claim. In light of this information, Frankston renewed his request that Attorneys Denniston and Perluss bring a stock-pool related complaint for the Aura shares. Again the two attorneys declined to do so, and did not warn Frankston concerning the statute of limitations.

In early 1993, Frankston ended Perluss's representation. In September, 1993, Denniston resigned from the law firm of Goodwin, Proctor & Hoar to take a position in government. As of this conclusion of these two attorneys' representation, no stock-pool claim had been filed.

b. *Frankston's engagement of new counsel in the California litigation.* Aura's partners had moved to transfer the Massachusetts Federal collection action to California. The transfer motion was allowed.

Frankston hired the California law firm of Lee & Tropper as successor counsel to pursue the now transferred Federal collection case (hereinafter, from time to time, the "California Federal collection case"). At Frankston's request, his new attorneys undertook to investigate the background and to decide whether to join the stock-pool claims in the California Federal collection case. However, before the stock-pool claims could be added, in September, 1993, the California Federal collection case was dismissed by the United States District Court as untimely filed, because the applicable collections-related limitations period on the loan collection by Frankston to Aura had expired. Frankston appealed from this dismissal. By a decision dated April 17, 1995, the United States Court of Appeals for the Ninth Circuit reversed the Federal District Court's dismissal of the collection case, and remanded the collection case for trial. *Frankston* v. *Aura Sys., Inc.,* 52 F.3d 333 (9th Cir.), cert. denied, 516 U.S. 932 (1995). In the ensuing trial, Frankston prevailed and was awarded $61,000 in collection damages. See Frankston *vs.* Aura Sys., Inc., U.S. Ct. App., No 01-55035 (9th Cir. April 17, 2002).

For a moment, we backtrack to September, 1993, at which point the state of affairs was as follows: the California Federal collection case had been dismissed by the lower court; an appeal

to the Ninth Circuit Court of Appeals was pending, but not yet decided; and the stock-pool claim had not been filed. Frankston and his California attorneys decided not to further postpone the filing of a complaint for the stock-pool claims pending the Ninth Circuit appellate decision.

c. *California State court stock-pool case.* On June 29, 1994, the attorneys in the Lee & Tropper law firm filed in the California Superior Court a new action against the partners with respect to Frankston's 40,000 shares of Aura stock, and also sought an accounting (hereinafter the "California State court stock-pool case").

In September, 1995, the defendant partners moved for summary judgment in the California State court stock-pool case, raising a statute of limitations defense that Frankston knew, or should have known, of the stock-pool claims in 1989, when certain of the SEC documents filed in connection with the private placement of Aura stock became publicly available. Frankston's attorneys countered in an opposition that it was not until late 1992 (when, as previously noted, certain information concerning the Aura stock had been disclosed in unrelated litigation) that Frankston had learned that his Aura shares had been divided among the other partners.

A California Superior Court judge denied the defendant partners' summary judgment motion based on the statute of limitations. Frankston's stock-pool claims were then tried to a jury. In that trial, among other issues, the statute of limitations defense was submitted for jury consideration. The jury found in Frankston's favor, and judgment entered for $ 1.7 million in the stock-pool case. The partners appealed from the jury verdict. On September 23, 2003, the California Court of Appeal reversed the judgment, holding that the stock-pool claims accrued no later than 1989 (when the SEC documents concerning the Aura stock became public). Frankston *vs.* Glen, Cal. Ct. App., No. B145777 (Sept. 22, 2003).[5] Therefore, the California appellate court held the stock-pool claims were time barred. In so hold-

---

[5]Various pleadings and court documents from the California action were submitted to the Superior Court judge in connection with the motions for judgment on the pleadings and the motion for leave to file an amended complaint and appear in the record here. As both parties refer to them without objection,

ing, the Court of Appeal observed that the jury verdict in the stock-pool case was not sustainable because, "[i]n reaching its conclusion, the jury rejected uncontroverted evidence suscept-ible to only one legitimate inference showing Frankston had con-structive notice of his claims not later than the spring of 1989." *Id.* at 13. With this appellate decision, Frankston's stock-pool claims were dead, barred by the statute of limitations.

2. *The Massachusetts legal malpractice case.* On September 22, 2004, Frankston filed this legal malpractice case in Massa-chusetts against Attorneys Denniston and Perluss — approximately one year after the California State Court of Appeal decision end-ing litigation on the stock-pool claims. The essence of the alleged legal malpractice was that the defendant attorneys had failed adequately to research the stock-pool claims, had negligently declined to file a lawsuit on the stock-pool claims, and — most pertinent to this appeal — had failed to warn Frankston that the statute of limitations could extinguish the stock-pool claims.

A Superior Court judge (the motion judge) granted the motions for judgment on the pleadings, pursuant to Mass.R.Civ.P. 12(c), and dismissed the legal malpractice case against Denniston and Perluss, on the basis that Frankston's complaint was time barred by the three-year Massachusetts statute of limitations for legal malpractice claims. See G. L. c. 260, § 4.[6] The motion judge rea-soned that Frankston's claims against Attorneys Perluss and Den-niston for failure to file the stock-pool action may have accrued in 1993, when Frankston and his California lawyers at the Lee & Tropper law firm were so concerned about a limitations bar and the timeliness of commencing a stock-pool case that the attorneys thereafter filed Frankston's stock-pool claims in California State court, without waiting for resolution of the then pending appeal

we take judicial notice of those court papers that the parties included in the record appendix. See *Reliance Ins. Co.* v. *Boston,* 71 Mass. App. Ct. 550, 555 (2008) ("Properly considered public records include the records of other courts in related proceedings, of which the judge may take judicial notice in any event").

[6]Entry of judgment on the pleadings under Mass.R.Civ.P. 12(c) means " 'that the complaint fails to state a claim upon which relief can be granted.' J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974)." *Jarosz* v. *Palmer,* 436 Mass. 526, 529 (2002). In reviewing a judgment on the pleadings, the appellate court takes the facts from the plaintiff's complaint and reviews the issues de novo. *Id.* at 529-530.

in the California Federal collection case. But, the motion judge
further reasoned that, at the latest, Frankston's claim of legal
malpractice against his former defendant attorneys for failure to
warn of the running of the statute of limitations on the stock-pool
claims accrued no later than September, 1995, when the partners'
summary judgment motion filed in the California State stock-
pool case advanced statute of limitations defenses to Frankston's
stock-pool based claims against the partners.

a. *Legal malpractice statute of limitations analysis.* There is
no debate, nor can there be, that Frankston's legal malpractice
claims are subject to the three-year limitations period codified
in G. L. c. 260, § 4. Over a decade passed from the date when
the defendant attorneys' representation ended and the 2004 fil-
ing of the malpractice case. Frankston seeks to save his mal-
practice complaint from falling to a limitations bar. In this sav-
ings effort, Frankston asserts the following arguments why, in his
view, the 1995 partners' summary judgment filing in the Cali-
fornia State Court stock-pool case did not activate the Massa-
chusetts legal malpractice limitations statute: (1) the motion did
not deprive Frankston of the protections of the discovery excep-
tion to the limitations rule because the summary judgment mo-
tion was denied and, therefore, he was not on notice, did not
discover a statute of limitations problem with respect to the stock-
pool case, and had no duty of inquiry concerning whether there
was legal malpractice because of the defendant attorneys' failure
to warn about the statute of limitations bar; (2) the summary
judgment motion did not commence the running of the legal mal-
practice statute of limitations because, as of 1995, Frankston had
not yet suffered a cognizable harm or loss; rather, Frankston had
a victory because, following denial of the partners' summary
judgment motion, a trial followed with a winning verdict of $1.7
million for him on the stock-pool claims; (3) the legal malpractice
cause of action materialized only in 2003, when the California
State Court of Appeal reversed the jury verdict and held that the
stock-pool claims were time barred, and therefore, it was not
until 2003 that Frankston knew of the specter of a statute of
limitations bar, and thereby discovered the defendant attorneys'
alleged malpractice and suffered appreciable harm; and (4) given
such a 2003 discovery date, the malpractice action filed in 2004

against Attorneys Denniston and Perluss was timely. We address these contentions in turn.

i) *The discovery rule.* Frankston invokes the discovery rule which, in effect, stretches the limitations period for a legal malpractice action by tolling the statute of limitations to the point in time when the alleged harm or loss caused by the legal malpractice is (or reasonably should have been) discovered. "The statute of limitations does not begin to run on a claim of malpractice until the plaintiff knows or reasonably should know that he or she has been harmed by the defendant's conduct." *Williams* v. *Ely*, 423 Mass. 467, 473 (1996). "Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 210 (1990). *Lyons* v. *Nutt*, 436 Mass. 244, 247 (2002). See generally *Taygeta Corp.* v. *Varian Assocs.*, 436 Mass. 217, 229 (2002).

Contrary to Frankston's contentions, the discovery rule does not save the legal malpractice complaint from the three-year limitations statute in G. L. c. 260, § 4. The discovery rule is not an endless protected time zone against the deadlines of a statute of limitations. The partners' September, 1995, summary judgment motion sent a strong storm warning of gathering and darkening clouds signaling the danger of the statute of limitations defense's extinguishing of Frankston's stock-pool claim. This interposition of the statute of limitations defense caused Frankston to incur legal fees. Thus, even though this summary judgment motion was denied in the pretrial phase, there was nonetheless left a marking line on the horizon of what Frankston knew and when he knew about a limitations bar on the stock-pool claim and the related potential legal malpractice.

We determine that the September, 1995, motion brought to the fore the very issues that underlie the alleged legal malpractice errors and omissions and yielded to Frankston the requisite knowledge of, and sufficient notice of, the purported malpractice harm by his lawyers' failure to warn of the potential time bar. At this point, a duty of inquiry was activated and the three-year Massachusetts limitations statute for legal malpractice started to run. With the September, 1995, motion Frankston knew, or should

have known, that the partners were advancing a limitations defense based on SEC filings that were publicly available in 1989; a potential time expiration bode ill for Frankston's stock-pool claims; the defendant attorneys had refused to file his stock-pool claims; and the defendants had not warned Frankston that his stock-pool claims against the partners might be deemed to have accrued as early as 1989. Thus, the discovery rule does not save the legal malpractice action.

ii) *The no-harm-or-loss theory.* Frankston's position seems to be that there was no appreciable harm or loss resulting from the 1995 partners' summary judgment motion because it was denied. Thus, Frankston contends, the legal malpractice claim did not accrue, and the limitations statute did not commence to run, because he did not know the full extent of the harm or loss impacting his stock-pool claims. Frankston's construction of what constitutes appreciable harm or loss is too narrow.

Although the statute of limitations on a legal malpractice action does not begin to run until the plaintiff has been harmed by the attorney's malpractice, it is not necessary that the plaintiff client know the full extent of harm or loss or know precisely in what manner and what harmful after-effects flow from the alleged malpractice; rather, "[o]nce a client or former client knows or reasonably should know that he or she has sustained *appreciable harm* as a result of the lawyer's conduct, the statute of limitations starts to run" (emphasis supplied). *Williams* v. *Ely,* 423 Mass. at 473.

Appreciable harm includes " 'injury, loss or detriment' that is 'capable of being measured or perceived.' " *Vinci* v. *Byers,* 65 Mass. App. Ct. 135, 139 (2005), quoting from *Kennedy* v. *Goffstein,* 62 Mass. App. Ct. 230, 233 (2004). Appreciable harm encompasses the incurring of legal expenses, such as litigation-related expenses in defending against, or advancing, an issue that is central to the alleged legal malpractice. "[T]he suffering of actual damages is an element of the tort of legal malpractice. . . . For a claim to accrue, however, the claimant need not have knowledge of the full extent of his damages. . . . [A legal malpractice claimant may have] suffered an actual loss, or appreciable harm, long before he lost his case" because of the alleged malpractice. *Pelletier* v. *Chouinard,* 27 Mass. App. Ct. 92, 95

(1989). Thus, for statute of limitations analysis concerning alleged legal malpractice, one starting point may be measured from the time that the client suffered appreciable harm by the incurring of "additional attorneys' fees and expenses required to ameliorate the harm caused by [the attorney's] alleged error." *Ibid.* And such appreciable harm through the incurring of such legal fees is sufficient to activate a duty of inquiry by the client into the issue or problem underlying the potential legal error or omission and to commence the running of the legal malpractice statute of limitations. For Frankston, as a result of his attorneys' failure to advise him of the running of the statute of limitations, that harm occurred in 1995.

iii) *The end-of-the-case theory.* Frankston next argues that, even if the partners' summary judgment motion provided notice of the limitations danger lurking, the case had not ended, and the stock-pool claim was not extinguished as time barred, until the decision of the California Court of Appeal in 2003, which finally closed the door on the claim. Therefore, Frankston submits, notice to and discovery by him, as the client, of the attorneys' potential legal malpractice should be deemed "suspended" pending this final appellate disposition.

There are at least two problems with this contention. First, the pretrial denial of a summary judgment motion is not a final judgment, but only a determination that there may be material issues of disputed fact that warrant a trial. See Mass.R.Civ.P. 56, 365 Mass. 824 (1974). Second, there is no legal authority for such a theory of suspension pending the final disposition in a case. That a case is ongoing and not finally adjudicated through the trial or appellate stage does not mean that there is no duty of inquiry into the harm and its connection to the attorney's conduct and no accrual of a legal malpractice claim; the risks of a statute of limitations bar on a legal malpractice claim are not left back stage, suspended to the final curtain call.[7]

Illustrative of the principle is the decision in *Massachusetts*

[7]Frankston also argues that the statute of limitations for his legal malpractice claims should be tolled for the period between the denial of summary judgment in 1995, and the California Court of Appeal's decision in 2003. This tolling argument is merely a recasting of the suspension argument advanced, and rejected, *supra.*

*Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.,* 394 Mass. 265, 268 (1985), in which the court established that accrual of a legal malpractice claim does not necessarily depend on the ultimate outcome of the underlying litigation. In that case, certain electric companies were sued by their insurer for reimbursement of monies paid to settle a claim brought by an injured employee because it was revealed that attorneys for the electric companies had permitted improper destruction of documents related to the employee's case. Once the insurer filed the complaint against the electric companies, "[w]hatever the ultimate result of that case would be, it was then clear that the electric companies would incur substantial legal expenses in the defense of a claim that was based in part on the alleged negligent conduct of their attorneys . . . ." *Ibid.* Accord *Cantu* v. *St. Paul Cos.,* 401 Mass. 53, 57 (1987) (though the extent of the harm, caused by the attorney's failure to give notice to an excess insurer, would not be known until the appeal concluded in the underlying case, the plaintiff had notice of harm when he retained another attorney for advice on his personal liability for the judgment). See *Levin* v. *Berley,* 728 F.2d 551, 554 (1st Cir. 1984) (plaintiff's injury did not await the tax court's decision upholding the Internal Revenue Service's assessment of deficiency, but started when the plaintiff paid additional legal fees to negotiate with the Internal Revenue Service to ameliorate a tax error caused by the plaintiff's attorney).

In sum, even though Frankston's final loss of the right to bring the stock-pool case did not come to closure until 2003 (with the California Court of Appeal decision), as of the 1995 partners' summary judgment motion based on the statute of limitations, all the pieces were in place: there was notice of the prospect of loss of the stock-pool claims by time expiration due to the partners' assertion of the statute of limitation; there was a duty of inquiry; Frankston confronted a legal fight against the partners' asserted statute of limitations bar, yielding appreciable harm in litigation fees incurred to defend against the partners' motion; Frankston knew that his previous attorneys had not warned him about the potential running of the statute of limitations on his stock-pool claims; and the three-year legal malpractice statute of limitations in G. L. c. 260, § 4, therefore, clicked on.[8] Accordingly, the 2004

___

[8]To the extent that Frankston contends that the date of the 1995 summary judgment filing was premature to use as a marking point — especially because

legal malpractice complaint filing was too late, and judgment correctly entered on the pleadings under Mass.R.Civ.P. 12(c).

iv) *Continuing representation doctrine.* For the first time on appeal, Frankston advances the doctrine of continuing representation as an exception to the running of the legal malpractice statute of limitations. The continuing representation doctrine "tolls the statute of limitations in legal malpractice actions where the attorney in question continues to represent the plaintiff's interests in the matter in question." *Murphy* v. *Smith*, 411 Mass. 133, 137 (1991). See *Lyons* v. *Nutt*, 436 Mass. 244, 250 (2002). Frankston's attempted reliance upon the doctrine of continuing representation does not work. An obvious and insurmountable obstacle is that beyond 1992-1993, there was no continuing legal representation by Perluss and Denniston. In 1992, Denniston had refused Frankston's request to add claims related to the stock pool to the then filed Federal collection case. In 1993, Frankston had fired Perluss, and Denniston had left private law practice and no longer represented Frankston. Moreover, Frankston hired successor counsel who filed the stock-pool case in California State court.[9]

---

the summary judgment motion was denied — this position ignores the issue of timely notice to the defendant attorneys alleged to have engaged in malpractice by not warning Frankston of the statute of limitations issues. Had Frankston fulfilled his duty of inquiry and provided notice of the alleged malpractice to the defendant attorneys, a tolling agreement could have been one means to preserve Frankston's legal malpractice claim, pending the ultimate resolution of the California State court stock-pool case — a status quo-preserving mechanism noted by the defendant attorneys' appellate counsel at oral argument.

[9]Frankston cites two cases, *Eck* v. *Kellem*, 51 Mass. App. Ct. 850 (2001), and *Rosen Constr. Ventures, Inc.* v. *Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 364 F.3d 399 (1st Cir. 2004), which applied the doctrine of continuing representation to clients who relied on the advice of attorneys who no longer represented them, but whose positions were adopted by their subsequent counsel. Neither affords Frankston an excuse for disregarding the import of the partners' 1995 statute of limitations argument in this context. In *Eck* v. *Kellem, supra* at 854-855, this court emphasized that Eck's former counsel specifically reassured Eck's trial counsel that Eck would incur no liability, and that the former and current attorneys were "aligned entirely" in their legal positions about the underlying lawsuit. See *Rosen Constr. Ventures, Inc.* v. *Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., supra* at 406-407 (citing similarity to *Eck* v. *Kellem, supra*, because Mintz, Levin continued to assure Rosen that the contract it had drafted would protect Rosen and continued to work with Rosen's trial counsel). No such alignment or reassurance can be gleaned from Frankston's complaint.

b. *Conclusion.* Based on the foregoing, the claims of legal malpractice set forth in Frankston's original and first amended complaint were properly dismissed as time barred.[10]

*Judgment affirmed.*

*Orders denying postjudgment motions affirmed.*

---

[10]Frankston also appeals from the denial of his motion for leave to file a second amended complaint. The procedural background is as follows. The defendant attorneys' motions for judgment on the pleadings were filed at different points in time. (We note, however, that this time differential in the motion filings does not affect the analysis set forth in this opinion.) Perluss's motion for judgment on the pleadings, filed on February 28, 2006, was allowed on May 31, 2006. On July 20, 2006, Denniston filed a motion for judgment on the pleadings on the same grounds. Frankston then moved for leave to file a second amended complaint. In early 2007, the court denied Frankston's motion to file a second amended complaint and allowed Denniston's motion, relying on the same grounds as the decision allowing Perluss's motion for judgment on the pleadings.

With respect to the second amended complaint, Frankston included no argument in his brief concerning the motion judge's denial of his motion for leave to file a second amended complaint. The omission cannot be remedied by addressing the matter in his reply brief. The issue is therefore deemed waived, pursuant to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).