Hinkle, Margaret R., J.
In this two-count action, Giovanna Pasquale alleges breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the law firm of Brody, Hardoon, Perkins & Kesten, LLP (Brody Hardoon).
Currently before the Court is Brody Hardoon’s motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). After hearingargument, theCourt allows the motion for the following reasons.
BACKGROUND
In assessing Brody Hardoon’s motion for judgment on the pleadings, the Court accepts as true the following factual assertions contained in Pasquale’s Third *302 Amended Complaint. See Flomenbaum v. Commonwealth 451 Mass. 740, 742 (2008)
Telcom USA, Incorporated (Telcom USA), is a closely held Massachusetts corporation that was formed in 1996 when Pasquale and her husband, Daniele La Posta, entered into a series of agreements with Telcom SpA (Telcom Italy). (Third Am. Compl. at par. 3.) Telcom Italy is owned and controlled by Alfonso Casale. (Third Am. Compl. at par. 4.)
During their negotiations in 1996, Casale, Pasquale and La Posta agreed that Telcom Italy would receive a small majority interest in Telcom USA (50.5 per cent interest compared to Pasquale’s 49.5 per cent) and, in exchange, that Pasquale and La Posta would retain management control of the corporation. (Third Am. Compl. at par. 5.) Pursuant to that agreement, La Posta then entered into an employment agreement to become President of the Telcom USA, and, from 1996 until 2004, Pasquale served as its Treasurer. (Third Am. Compl. at par. 6.) In addition, La Posta and Pasquale became members of the Board of Directors. (Third Am. Compl. at par. 6.)
Also as part of the negotiations, Pasquale and Casale, on behalf of Telcom Italy, executed a shareholders agreement. (Third Am. Compl. at par. 7.) That agreement provided in part that, absent “unanimous consent of the stockholders to the contrary, at least 50% of the net profits and dividends of Telcom USA shall be distributed at least annually to the shareholders” in proportion to their percentage ownership of the company. (Third Am. Compl. at par. 8.)
From 1996 to 2001, La Posta grewTelcom USA from $1 in sales to $20 million in sales, and, by the end of 2001, the corporation had a fair market value of $14 million. (Third Am. Compl. at par. 11.)
In approximately September 2001, Brody Hardoon was retained as corporate counsel to Telcom USA. (Third Am. Compl. at par. 12.)[2] As corporate counsel, Brody Hardoon prepared resolutions for, and minutes of, Telcom USA’s stockholders and directors meetings, and maintained and controlled Telcom USA’s corporate records. (ThirdAm. Compl. at par. 14.) After Brody Hardoon was retained, Telcom USA held its stockholders and directors meetings at the firm’s Boston office. (Third Am. Compl. at par. 13.)
On September 13, 2001, with Brody Hardoon’s “substantial assistance,” Casale convened a special joint meeting of Telcom USA’s stockholders and directors. (Third Am. Compl. at par. 17.)[3] At the joint meeting, Casale directed that his brother-in-law, Antonio Console, be appointed to Telcom USA’s Board, which at the time was composed of Pasquale, La Posta, Casale and his son, Raffaele Casale. (See Third Am. Compl. at par. 18.)
The Board then passed a resolution creating an Executive Committee, chaired by Casale, which thereafter ran the day-to-day operations of Telcom USA. (Third Am. Compl. at par. 19.)[4] All Telcom USA’s officers, including La Posta, were subordinated to the Executive Committee with regard to managerial decisions. (Third Am. Compl. at pars. 19-20.) La Posta’s position as President of Telcom USA was thereby “effectively eliminated.” (ThirdAm. Compl. at par. 22.)
Pasquale asserts “(u]pon information and belief’ (i) that Brody Hardoon prepared the resolution that was passed at the joint meeting and “orchestrated and directed the proceedings” (see Third Am. Compl. at par. 21) and (ii) that “the Executive Committee regularly and actively consulted with Brody Hardoon” (Third Am. Compl. at par. 23). Brody Hardoon posted on its web site that it “represented an American subsidiary [Telcom USA] of a European manufacturer [Telcom Italy]” and had “designed a strategy to separate the President [La Posta] from the company without exposing the company to liability.” (Third Am. Compl. at par. 24.) Pasquale asserts on “information and belief’ that Brody Hardoon “devised and orchestrated Telcom Italy’s plan to seize managerial control of Telcom USA” from Pasquale and La Posta. (Third Am. Compl. at par. 23; see also id., at par. 39.)
After September 2001, Telcom Italy and Casale “caused” Telcom USA not to distribute profits or dividends to Pasquale and also not to pay her the director fees “that she was entitled to receive” as a member of Telcom USA’s Board. (Third Am. Compl. at pars. 25 & 26.) Pasquale asserts “[u]pon information and belief’ that Brody Hardoon was involved in “instructing Telcom USA’s new President” not to pay those dividends and director fees. (ThirdAm. Compl. at par. 39.)
On March 15, 2002, Pasquale and La Posta filed suit against Telcom Italy, Casale and Telcom USA, for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and other claims. (Third Am. Compl. at par. 27.) Brody Hardoon represented Telcom Italy, Casale and Telcom USA in that lawsuit. (Third Am. Compl. at par. 28.)
In the spring of 2005, after a three-week trial, the jury found (i) that Telcom Italy had breached the 1996 management agreement (see Third Am. Compl. at par. 31) and (ii) that Telcom Italy had breached its fiduciary duty to Pasquale by preventing her from receiving a dividend in 2002 and from receiving directors fees from 2001-2003 (see Third Am. Compl. at par. 33). On July 27, 2005, the Court (Brassard, J.) entered judgment, awarding Pasquale damages of $1,784,005.20 for breach of the management agreement and breach of the implied covenant of good faith and fair dealing of that agreement. (Third Am. Compl. at par. 35.) The Court also awarded Pasquale $266,947.20 for unpaid director fees and dividends on her breach of fiduciary duty claim. (ThirdAm. Compl. at par. 36.) Represented by Brody Hardoon, the defendants appealed, and, on September 30, 2008, the Appeals Court affirmed the judgment. (Third Am. Compl. at par. 37.)[5]
*303 On numerous occasions before and after judgment entered in the 2002 lawsuit, Pasquale requested that Telcom USA provide her access to the corporation’s books and records, so that she could monitor the status of her investment. (Third Am. Compl. at par. 56.) On April 4, 2006, Brody Hardoon responded that Telcom USA would not provide any of the requested information. (Third Am. Compl. at par. 59.) Pasquale thereafter filed an emergency motion, which Brody Hardoon opposed on Telcom USA’s behalf. (Third Am. Compl. at par. 60.) The Court ordered the requested information be provided to Pasquale, subject to certain restrictions on disclosure to third parties. (Third Am. Compl. at par. 60.) Brody Hardoon, on behalf ofTelcom USA, filed a motion to stay the case in order to pursue an interlocutory appeal. (Third Am. Compl. at par. 61.) The Court granted that motion and stayed the case until October 9, 2006. (Third Am. Compl. at par. 61.) Telcom USA never filed the interlocutory appeal. (Third Am. Compl. at par. 61.)
Instead, on October 10, 2006, the day that the stay order expired, Telcom USA purported to make an assignment for the benefit of creditors. (Third Am. Compl. at par. 62; see also id., at par. 52.) Telcom USA did not provide Pasquale prior notice of the assignment nor did it schedule a shareholders meeting to consider such action. (Third Am. Compl. at par. 63.) Pasquale asserts “(u]pon information and belief’ that (i) the assignment was made “with the substantial assistance of Brody Hardoon” (Third Am. Compl. at par. 62) and (ii) that “Brody Hardoon orchestrated Telcom USA’s [assignment]” for the benefit ofTelcom Italy and Casale, and to her detriment (Third Am. Compl. at par. 64).
After the assignment for the benefit of creditors was made, the Court appointed a receiver for Telcom USA. (Third Am. Compl. at par. 52.) Special counsel to the receiver prosecuted a derivative claim asserted by Pasquale to recover fees Telcom USA paid for legal services that Brody Hardoon provided to, or for the benefit of, Telcom Italy and Casale in the 2002 litigation. (Third Am. Compl. at par. 53.) Brody Hardoon subsequently disclosed that it had billed Telcom USA $616,062.50, of which the receiver’s special counsel determined that $516,367.13 were properly allocable to and should have been billed to and paid by Telcom Italy. (See Third Am. Compl. at pars. 48 & 53.)[6] Pasquale asserts in her complaint that Telcom USA’s litigation expenses, including fees for legal services that Brody Hardoon billed to Telcom USA for services performed on behalf of Telcom Italy and Casale, contributed to Telcom USA’s poor financial performance and left the corporation without net profits or dividends to distribute to Pasquale. (Third Am. Compl. at par. 54.)
DISCUSSION
In her Third Amended Complaint, Pasquale alleges breach of fiduciary duty (Count I) and aiding and abetting breach of fiduciary duty (Count II). She argues that Brody Hardoon, as corporate counsel to the closely-held Telcom USA, owed a fiduciaiy duty to her, as a shareholder of the corporation. She argues that the firm breached that duly to her by: (i) “devising and orchestrating Telcom Italy’s impermissible seizure of managerial control of Telcom USA,” (ii) “billing and accepting payment from Telcom USA for legal services rendered for the benefit ofTelcom Italy,” (iii) “failing to disclose to [her] that [the firm] had improperly apportioned its fees to her detriment,” (iv) “directing Telcom USA to withhold financial information to which she was entitled” and (v) “orchestrating the [assignment for the benefit of creditors] without [her] knowledge or approval solely for the benefit of Telcom Italy.” (Pl.’s Opp’n to Def.’s Mot. to Dismiss at 7-8.) Pasquale argues that Brody Hardoon also aided and abetted Telcom Italy’s breaches of fiduciaiy duties to her by (i) “devising and substantially assisting Telcom Italy in implementing the plan to seize managerial control of Telcom USA from [her and La Posta],” (ii) “instructing Telcom USA not to pay her annual dividends and directors’ fees,” (iii) “billing and accepting payment from Telcom USA for legal services rendered for the benefit ofTelcom Italy" and (iv) “assisting Telcom Italy in its efforts to withhold Telcom USA financial information from her.” [Id., at 8.)
Pursuant to Mass.RCiv.P. 12(c), Brody Hardoon moves for judgment on the pleadings. Brody Hardoon argues that Pasquale’s allegations are either time-barred, precluded by the “law of the case” doctrine or fail to state a claim upon which relief can be granted. “Rule 12(c) of the Massachusetts Rules of Civil Procedure provides that, ‘[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.’ ” Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 659 (2004), quoting Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). “A motion for judgment on the pleadings pursuant to rule 12(c) is a challenge to the legal sufficiency of a complaint.” Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 354 (2009). “A defendant’s rule 12(c) motion is ‘actually a motion to dismiss . .. [that] argues that the complaint fails to state a claim upon which relief can be granted’ ” (alteration in original). Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice §12.16 (1974). A motion for judgment on the pleadings, like a motion to dismiss, is also appropriate to challenge a complaint that “shows on its face that the statute of limitations has run prior to the date the action was commenced.” Babco Indus., Inc. v. New England Merchants Nat’l Bank, 6 Mass.App.Ct. 929, 929 (1978). See, e.g., Frankston v. Denniston, 74 Mass.App.Ct. 366, 367, 376-77 (2009) (affirming entry of judgment on the pleadings where limitations period had run). Here, the Court agrees with Brody Hardoon that Pasquale’s allegations either fail to state a claim upon which relief *304 can be granted or are barred by the three-year statute of limitations.
Pasquale’s claims relating to Brody Hardoon’s conduct after the 2002 lawsuit commenced fail to state a claim upon which relief can be granted. Even assuming the viability in Massachusetts of a claim that counsel to a closely held corporation owes a fiduciary duiy to the corporation’s minority shareholder, as Pasquale contends, see Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 513 (1989) (observing that “it is fairly arguable that an attorney for a close corporation owes a fiduciary duly to the individual shareholders” but not deciding the issue),[7] there could have been no fiduciary duty owed by Brody Hardoon to Pasquale once she initiated litigation in which Brody Hardoon represented the defendants. “It is well-established that attorneys owe no duty to their client’s adversary.” Lamare v. Basbanes, 418 Mass. 274, 276 (1994), citing Page v. Frazier, 388 Mass. 55, 63 (1983). In these circumstances, to impose a duty running from Brody Hardoon to Pasquale would impermissibly create a potential conflict with the firm’s duiy to its clients. See id., citing Beecy v. Pucciarelli, 387 Mass. 589, 597 (1982) (“[I]f a duly was owed to the adversary of an attorney’s client, an unacceptable conflict of interest would be created, and because it would be inimical to the adversary system for an adverse party to be allowed to rely on an opposing party’s attorney”). “A fiduciary duty exists ‘when one reposes faith, confidence, and trust in another’s judgment and advice.’ ” Doe v. Harbor Schools, Inc., 446 Mass. 245, 252 (2006), quoting Van. Brode Group, Inc. v. Bowditch & Dewey, 36 Mass.App.Ct. 509, 516 (1994). After Brody Hardoon undertook representation of the defendants in the 2002 lawsuit, there could be no plausible claim that Pasquale was owed a fiduciary duly by the firm.
Pasquale’s other claims against Brody Hardoon, which flow from the alleged corporate “freeze-out” that was also the genesis of the 2002 litigation, are barred by the statute of limitations. “Breach of fiduciary duiy is a cause of action in tort that is governed by G.L.c. 260, §2A, which provides for a three-year period of limitation.” Lattuca v. Robsham, 442 Mass. 205, 213 (2004); see O’Connor v. Redstone, 452 Mass. 537, 551 (2008). On a breach of fiduciary duty claim, the limitations period begins when the plaintiff has “ ‘actual knowledge’ that she has been injured by the fiduciary’s conduct.” Doe v. Harbor Schools, Inc., 446 Mass. at 254, citing cases. “(T]he critical event that starts the limitations period running on a claim for breach of fiduciary duty is when the plaintiff first becomes aware of facts giving rise to her injury by the defendant, and not... when the plaintiff first understands the causal connection between her injuries and a legally cognizable claim against the defendant.” Id., at 248. In this case, Pasquale’s Third Amended Complaint, on its face, shows that she had “actual knowledge” of Brody Hardoon’s substantial involvement in the affairs of Telcom USA, and specifically the firm’s involvement in the alleged “seizure of managerial control,” no later than when she brought suit in 2002. The facts underlying the earlier action also form the foundation of the claims Pasquale now makes against Brody Hardoon for its conduct during that pre-suit period. She was thus sufficiently aware of the factual bases of these claims to start the limitations period more than three years before she filed this suit in 2006. The statute of limitations was not tolled until she had a better appreciation of the legal claims she now alleges. See id., at 256-57 (“Actual knowledge of injury suffered at a fiduciary’s hands, not knowledge of the consequences of that injury [i.e., a legal claim against the fiduciary], sets the three-year statute of limitations in play.”) Claims arising out of Brody Hardoon’s conduct before the 2002 lawsuit was filed are time barred.
ORDER
For the foregoing reasons, Defendant Brody, Hardoon, Perkins & Kesten, LLP’s Motion to Dismiss the Plaintiffs Third Amended Complaint is ALLOWED.

 Pasquale asserts that, “[o]n information and belief, at that time, Brody Hardoon was also counsel to Telcom Italy and Mr. Casale.” (Third Am. Compl. at par. 12.)

 The joint meeting occurred in Massachusetts, with Casale participating by telephone and Brody Hardoon voting on Telcom Italy’s behalf via proxy. (Third Am. Compl. at par. 17.) Pasquale asserts “[o]n information and belief that the conference call was initiated from the offices of Brody Hardoon.” (Third Am. Compl. at par. 17.)

 The Executive Committee consisted of Casale, his son, Raffaele Casale and Console. (Third Am. Compl. at par. 19.)

 See Pasquale v. Casale, 72 Mass.App.Ct. 729 (2008).

 During the 2002 litigation, an attorney for Brody Hardoon represented in court that the firm had properly apportioned the litigation fees and that Telcom USA had not paid Telcom Italy’s or Casale’s fees. (Third Am. Compl. at par. 46.)

 It does not appear that any Massachusetts court has allowed a breach of fiduciary duty claim on the theory that counsel to a close corporation owes such a duty to the corporation’s shareholder. See G. Jacobs & K. Laurence, Professional Malpractice §17.1 (2007); cf. Cacciola v. Nellhaus, 49 Mass.App.Ct. 746, 750-54 (2000). Nationally, there is a split of authority on the question whether to recognize any duty owed by counsel to a close corporation to the corporation’s shareholders, see, e.g., Bovee v. Gravel, 174 Vt. 486, 489 (2002) (discussing cases), but it seems that most appellate courts have refused to find that counsel’s representation of a close corporation, in itself, creates a duty to the corporation’s shareholders. See, e.g., Brennan v. Ruffner, 640 So.2d 143, 145-46 (Fla.Dist.Ct.App. 1994); Skarbrevik v. Cohen, England & Whitfield, 231 Cal.App.3d 692, 703-04 (1991); Felty v. Hartweg, 169 Ill.App.3d 406, 408-11 (1988); Egan v. McNamara, 467 A.2d 733, 739 (D.C. 1983); cf., e.g., Collins v. Telcoa Int’l Corp., 283 A.D.2d 128, 134 (N.Y. 2001) (finding allegations adequate to state cause of action); Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C., 107 Mich.App. 509, 514-16 (1981) (recognizing duty based on specific allegations pleaded); but see the discussion of In Re *305 Brownstein, 288 Or. 83, 87 (1979), in In re Kinsey, 294 Or. 544, 561-62 & n. 10 (1983). Brody Hardoon does not press the point.