NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-322

JAMES D. JAVARAS

vs.

STEVEN M. LAFORTUNE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After hiring Steven LaFortune, the defendant (attorney), to represent him in litigation, James Javaras, the plaintiff (Javaras), sued him for malpractice, breach of a fiduciary duty, breach of contract, and violation of G. L. c. 93A.  The attorney, claiming he had not been paid for his legal services, counterclaimed for breach of contract, violation G. L. c. 93A, and quantum meruit.  As to Javaras's claims, a judge entered summary judgment for the attorney on all but part of the c. 93A claim (later resolved by an agreement for judgment in the attorney's favor).  Following a jury-waived trial on the counterclaims, a second judge entered an amended judgment for the attorney for breach of contract in the amount of

$1,178,796.85 and ordered judgment to enter for Javaras on the remaining counterclaims.  The parties cross-appeal, and we affirm.

Discussion.  a.  Summary judgment.  The judge here allowed the attorney's motion for summary judgment because Javaras did not file his civil action within the applicable three-year statute of limitations.  Summary judgment may enter when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "[S]ummary judgment may be granted on the question whether a particular statute of limitations has run."  Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 383 (1986).  We apply de novo review to the summary judgment decision.  Karatihy v. Commonwealth Flats Dev. Corp., 84 Mass. App. Ct. 253, 255 (2013).

The undisputed facts show that Javaras did not timely file his civil action against the attorney.  Javaras served for many years as a trustee to four trusts in connection with the DiGeronimo family.  In July of 2016, Javaras contemplated filing a lawsuit against the beneficiaries.  After obtaining advice from the attorney that trust funds could be used to pay for the litigation, Javaras withdrew money from the DiGeronimo trust

2

accounts to pay the attorney fees.  On June 29, 2016, Javaras, represented by the attorney, filed a lawsuit against the beneficiaries.  Months later, on January 6, 2017, another Superior Court judge issued a preliminary order regarding a motion for a preliminary injunction filed by new trustees for the DiGeronimo trusts prohibiting Javaras from using trust funds to pay attorney fees.  Within weeks of that order, Javaras filed an accounting with the court as also ordered.  On March 2, 2017, that same judge issued a memorandum of decision on the motion for a preliminary injunction, ordering the withdrawn funds to be returned or paid into escrow and prohibiting Javaras from accessing trust assets.  That judge also concluded that Javaras incurred legal fees "for his personal defense . . . as opposed to expenses he incurred for the trusts' benefit."  Javaras terminated the attorney's representation on November 10, 2017, and more than three years later he filed his civil action against the attorney on November 16, 2020.

"Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues."  G. L. c. 260, § 4.  The cause of action here accrued no later than March 2, 2017, when the judge issued his memorandum of decision on the injunction.  At that time, the judge concluded that

3

Javaras used trust funds for his personal defense. Javaras has consistently maintained (and alleged in his complaint) that he accessed the trust funds on the advice of the attorney. As Javaras put it in his complaint, "Essentially every aspect of the Court's Order was contrary to what . . . [the attorney] had counseled Javaras would happen at the outset of the action." Thus, when the judge issued his memorandum of decision, Javaras knew or reasonably should have known that the attorney had misadvised him. See Williams v. Ely, 423 Mass. 467, 473 (1996) (statute of limitations begins to run when "plaintiff knows or reasonably should know" that he has been harmed by defendant's conduct). "[I]t is not necessary that the plaintiff client know the full extent of harm or loss or know precisely in what manner and what harmful after-effects flow from the alleged malpractice." Frankston v. Denniston, 74 Mass. App. Ct. 366, 374 (2009). Therefore, the late-filed civil action is barred by G. L. c. 260, § 4, and the attorney is entitled to summary judgment.

We disagree with Javaras's contention that the statute of limitations had been tolled. While it is true that the statute may be tolled "where the attorney in question continues to represent the plaintiff's interest in the matter in question," Murphy v. Smith 411 Mass. 133, 137 (1991), tolling for this

4

reason would not have mattered because the attorney's representation here ended on November 10, 2017, more than three years before the filing of the civil action.  We also reject the related contention that the statute of limitations tolled due to the attorney's frequent advice that the adverse rulings were wrong and would be corrected on appeal.  The "accrual of a legal malpractice claim does not necessarily depend on the ultimate outcome of the underlying litigation."  Frankston, 74 Mass. App. Ct. at 376.  The mere fact "[t]hat a case is ongoing and not finally adjudicated through the trial or appellate stage does not mean that there is no duty of inquiry into the harm and its connection to the attorney's conduct and no accrual of a legal malpractice claim."  Id. at 375.  We decline to address a further contention about tolling during the pandemic as Javaras did not raise this below and presents just a single sentence in his brief.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("appellate court need not pass upon questions or issues not argued in the brief").

b.  Trial.  On review of a jury-waived trial, "[w]e accept the judge's findings of fact unless clearly erroneous, but we 'scrutinize without deference the legal standard which the judge applied to the facts.'"  Ndoro v. Torres, 105 Mass. App. Ct. 128, 133 (2024), quoting Andover Hous. Auth. v. Shkolnik, 443

5

Mass. 300, 306 (2005).  Upon review of the claims advanced on appeal by Javaras and the attorney, we discern no errors by the trial judge.

i.  Breach of contract counterclaim.  Contrary to Javaras's contention, the trial judge did not err in assessing the breach of contract counterclaim.  He argues that the judge impermissibly required expert testimony on whether the fees charged by the attorney were excessive.  In his written findings, the judge noted, "Javaras subjectively felt that the bill was beyond that which was objectively reasonable[;] however Javaras did not retain an expert attorney to review the bill in order to provide an objective source for his subjective view."  In context, the judge did not mandate expert testimony to raise a defense.

Instead, the judge merely articulated his thought process in weighing the evidence of Javaras's defense to the counterclaim.  According to the judge, the attorney credibly testified that the "billings were reasonable and necessary."  Javaras testified that the legal work had been done and acknowledged that he had no factual basis to state that the fees were excessive because he was "not a lawyer."  Given this evidence, without proof from a "qualified attorney to review the bill and provide testimony," the judge was unpersuaded by

Javaras's subjective sense that the bills were excessive.  We decline to second guess the judge's thought process and accord his assessment of the quality of the evidence "considerable respect because 'it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence.'" Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986), quoting New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977).

    ii.  The attorney's 93A counterclaim.  Finally, the attorney contends that the trial judge erred by failing to address evidence showing that Javaras made repeated fraudulent misrepresentations in violation of c. 93A "to string him along to continue to work without payment."  We disagree.

    The trial judge fully addressed this claim, but was unpersuaded that it constituted a violation of 93A.  As the judge noted, Javaras faced significant legal bills that were "higher than expected," worked with two additional attorneys "to provide him with input on the billings," "worked collaboratively to try and keep the attorney fees under control," and engaged in unsuccessful mediation.  It is clear from the judge's emphasis on this evidence and by his rejection of the attorney's contention as not credible that he was not persuaded Javaras's

7

conduct amounted to "misrepresent[ing] the true situation" to keep the attorney "on a string."  Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356 (1985).  Here, again, we do not displace the judge's view of the evidence after trial.  See Edinburg, 22 Mass. App. Ct. at 203.

Summary judgment for the
  attorney on Javaras's
  complaint and amended
  judgment after jury-waived
  trial on the counterclaims
  affirmed.

By the Court (Blake, C.J.,
  Hodgens & Toone, JJ.[1]),

Clerk

Entered:  August 5, 2025.

---

[1] The panelists are listed in order of seniority.