Plaintiffs Brian Lesser ("Lesser") and Burn, LLC ("Burn") (collectively, the "Plaintiffs") have brought this action against Defendants Kristen L. Scanlon, Esq. ("Attorney Scanlon") and her law firm, Scanlon Law, LLC[1] ("Scanlon Law") (collectively, the "Defendants"), asserting claims of negligence, breach of contract, breach of fiduciary duty, and negligent misrepresentation. Presented for decision is Defendants' Motion to Dismiss the Complaint pursuant to Mass. R. Civ. P. 12(b)(6}, which rests on the ground that Plaintiffs' claims are barred by the applicable statute of limitations. After review of the parties' filings and a hearing, and for the reasons which follow, the Defendants' Motion to Dismiss shall be ALLOWED.
 
--------------------------------------------
 
[1] The Complaint incorrectly names the furn as "Scanlon Law LLP." The misidentification is of no consequence to the Court's decision.
 
                                                            -1-
 
FACTUAL ALLEGATIONS[2]
            Lesser is an investor and owner of several Boston area restaurants and the Manager of Burn.[3] In 1996, Burn entered into a commercial contract to lease part of the premises at 647 Tremont Street, Boston, from its owner, N&M Trust VII ("N&M"), for the purpose of operating a restaurant (the "Lease"). Article 11.24 of Lease granted Bum a sublicense of N&M's Liquor License (No. LB 99213), subject to a ''Negative Pledge Agreement" prohibiting Bum from transferring the license to any other location or ''pledg[ing], assign[ing], sell[ing] or transfer[ring] the Liquor License to any person, mortgage or entity other than [N&M] or a transferee approved in advance writing by [N&M] . . . "(Compl., ¶14.) Pursuant to Article 8 1(c) of the Lease, a breach of the Negative Pledge Agreement by Bum would constitute a material default. The Boston Licensing Board ("BLB") and the Alcohol Beverage Control Commission ("ABCC") approved N&M's grant of license to Burn in accordance with the aforementioned terms. Burn operated-a restaurant at this location from 1996 to 2018. To do so, Burn and N&M extended the Lease several times. However, these parties never altered or amended the terms of the Negative Pledge Agreement.
            Attorney Scanlon was admitted to the Massachusetts bar in December, 2009, and thereafter operated Scanlon Law as a solo practitioner. Her practice focused on licensing,· permitting and business consulting for the hospitality industry. Scanlon provided legal counsel to Lesser and his associated business entities, including Burn, for approximately ten years. At some
 
--------------------------------------------
 
[2] The following facts are drawn from the allegations set forth in the Complaint, including the documents attached to, referenced in or relied upon in the pleading. See Eigerman v. Putnam Invs.• Inc., 450 Mass. 281,285 n.6 (2007); Marram v. Kobrick Offshore Fund. Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis Univ . 432 Mass. 474,477 (2000). Additionally, the undersigned takes judicial notice of court records in related proceedings, see Jarosz v. Palmer. 436 Mass:526, 530 (2002), which the parties concede is appropriate for the Court to do.
[3] Burn, Inc. operated as a Subchapter S corporation from 1996 until 2018, when it was converted to Bum, LLC. For purposes hereof, the entities are referred to collectively as "Bum."
 
                                                            -2-
 
point, Attorney Scanlon reviewed the Lease and advised Plaintiffs that the Negative Pledge Agreement was unenforceable and void as contrary to public policy.
            On November l; 2018, Bum executed a  promissory  note for a loan to Lesser, and pledged the Liquor License as collateral (the "License Pledge"). Attorney Scanlon did not draft, and was not otherwise involved in, the  License  Pledge  agreement.  After they  executed  the License Pledge, however, Attorney Scanlon prepared and submitted petitions to the BLB and ABCC. on behalf of Plaintiffs, for approval of the License Pledge. Plaintiffs allege that Attorney Scanlon falsely represented to the BLB and ABCC that the License Pledge did not violate any prior agreements (specifically, the Lease). Attorney Scanlon requested that Lesser sign an attestation to this effect, which she then submitted in support of the petitions. Plaintiffs contend that Lesser only executed this affidavit because Attorney Scanlon withheld operative documents and information from him, including the Lease. Lesser was thereby prevented from making an informed assessment of the documents he signed.[]4 Based on Attorney Scanlon's submissions, the BLB and ABCC approved the License Pledge on or about September 4, 2019.
            In or around January, 2020, Bum sought to assign the Lease and its interest"in the Liquor License to a third party to operate a new restaurant at the location. Attorney Scanlon again advised Plaintiffs that the Negative Pledge Agreement was unenforceable as contrary to public policy, and, therefore, Bum was free to transfer the Liquor License to a new tenant rather than back to N&M.
            On January 8, 2020, Mario Nicosia, trustee ofN&M, sent a letter'throughcounsel to
 
--------------------------------------------
 
[4] While of no bearing on the statute of limitations issue raised by Defendants' Rule 12 morion or the Court's resolution thereof, the undersigned notes merely as an aside that the allegation that Attorney Scanlon deprived Plaintiffs of an opportunity to review the Lease - a document which Plaintiffs executed thirteen years before Attorney Scanlon began practicing law in Massachusetts, and extended repeatedly thereafter - strains the bounds of plausibility.
 
                                                            -3-
 
Burn, asserting that Bum's assignment of the Liquor License violated the Negative Pledge Agreement and that Burn was thereby in default of the Lease. The letter further stated that the Lease was terminated and, pursuant to the applicable Lease terms, N&M demanded that Burn transfer the Liquor License back to N&M for one dollar.
            On January 24, 2020, Nicosia, N&M and an affiliated entity (the "N&M plaintiffs") filed suit in Suffolk Superior Court against Burn. Lesser and others (the "Burn parties") for breach of the Lease and violation ofG.L. c. 93A. See Nicosia v. Burn LLC, No. 2084CV00218, Dkt. No. 1 (Mass. Super. Ct. Jan. 24, 2020) (the "N&M Lawsuit"). In addition to damages, the N&M plaintiffs requested preliminary and permanent injunctive relief in the form of an order voiding the License Pledge, requiring the Burn parties to return the Liquor License to N&M, and prohibiting the Burn parties from otherwise transferring or further encumbering the license. Attorney Scanlon and Scanlon Law did not represent the Burn parties in connection with the N&M lawsuit, and Plaintiff's Complaint here does not allege that Defendants had any involvement with that litigation.
            On February 10, 2020, this Court (Giles, J.) denied the N&M plaintiffs' request for a preliminary injunction, see14:.. Dkt. Nos. 5-7. The N&M plaintiffs timely appealed this decision to a single justice of the Appeals Court. See G.L. c. 231, § 118. On March 19, 2020. the Single Justice (Kinder, J.) reversed the denial of preliminary injunction in part,[5] and ordered that the Bum parties "not pledge, assign, sell, transfer, hypothecate or otherwise encumber the liquor license at issue ... , or any interests in such liquor license" until further order of the Court. Trustee of N&M Trust VII v. Burn LLC, No. 2020-J-0129, slip op. (Mass. App. Ct. Mar. 19,
 
--------------------------------------------
 
[5] In their appeal, the N&M Parties ''abandon[ed] their request that [Bum, et al.] be ordered to tenninate the Pledge Agreement in place, but continue[d] to seek an injunction restraining [them] from transferring or further encumbering the contested license."
 
                                                            -4-
 
2020). Relevant here, the Single Justice concluded that the N&Mplaintiffs were likely to succeed in enforcing the Negative Pledge Agreement, as "[n]one of the cases cited by the defendants stand inarguably f r the proposition" that it was "unenforceableas a matter of public policy." Id. The Single Justice also concluded that the N&M plaintiffs were likely to suffer irreparable harm if they were deni d aninjunction, because "[t]here are a finite number of liquor licenses available in the city of Boston" and. even if the N&M plaintiffs prevailed, ' ere is no guarantee that one would be available for purchase at the t;ime a  money  judgment  is satisfied." Id. Said harm was deemed to outweigh the alleged harm to the Bum parties from the requested injunction, which they claimed might subject the license to revocation or jeopardize their ability to sell their interest at market value. Id.
            On July 31, 2020, the N&M plaintiffs moved for leave to sell the Liquor License and place the proceeds in escrow, which the Court (Sullivan, S., J.) allowed. Nicosia. No. 2084CV00218, Dkt. No. 16 (Mass. Super. Ct. Sept. 10, 2020). The Burn parties timely appealed pursuant to G.L. c. 231, § 118. On October 29, 2020, the Single Justice (Wendlandt, J.) affirmed the order, concluding (once again) that "[t]hecases cited by the defendants do not support the conclusion that the lease provisions at issue ... are unenforceable[,]" and that "the trial judge properly adopted the prior single justice'  s conclusion that the [N&M] plaintiffs established a likelihood of success on the merits and substantial risk of irreparable harm." Nicosia v. Burn. LLC, No. 2020-J-0453, slip op. (Mass. App. Ct. Oct. 29, 2020). Further, Justice Wendlandt found that the Burn parties did not "substantiate the claim that the lease provisions regarding transfer of the license are against the public welfare or purpose of G.L. c. 138." Id.
            On April 28, 2023, this Court (Krupp, J.) granted partial summary judgment for the N&M plaintiffs. In its ruling, the Court declared that the Negative Pledge Agreement was lawful and
 
                                                            -5-
 
enforceable, the License Pledge was an event of default under the Lease, the License Pledge was null and void, and N&M's termination of the Lease was valid. Nicosi No.2084CV00218, Dkt. No. 61.
            Following a jury-waived trial of the remaining claims and counterclaims, the Court (Kazanjian, J.) entered judgment for the N&M plaintiffs on their claims of breach of contract, violation of G.L. c. 93A, and conversion against Burn and Lesser. denied the Burn parties' counterclaims, and awarded the N&M plaintiffs $2,096,566.03, inclusive of actual damages, treble damages under G.L.c. 93A, prejudgment interest, costs and attorneys' fees. Mk, Dkt. No. 92 (Jan.24, 20 4) and No.113(June 11, 2024). Plaintiffs filed the present action on June 13, 2025.
DISCUSSION
            I. LEGAL STANDARD
            Defendants have moved to dismiss Plaintiffs' claims pursuant to Mass. R. Civ. P. 12(b)(6). To :Survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual allegations plausibly suggesting (not merely consistent with)' an entitlement to relief . . . " Iannacchino v. Ford Motor Co., 451 Mass. 623,636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,557 (2007). "The allegations must be more than 'mere labels and conclusions,' and must 'raise a right to relief above the speculative level.'" Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 17 (2018), quoting Galiastro v.  Mortgage Elec. Registration Sys.; Inc., 467 Mass. 160, 165 (2014). The Rule 12 Court considers the factual allegations of the · complaint and any documents annexed thereto or relied upon therein, as well as any matters of public record susceptible to judicial notice. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011); Jarosz v. Palmer, 436 Mass. 526, 530 (2002). The Court must "accept as true the
 
                                                            -6-
 
factual allegations in the complaint and the attached exhibits, [and] draw all reasonable inferences in the plaintiff's favor . . . "Buffalo-Water 1,481 Mass. at 17. Plaintiffs, however, must allege specific facts sufficient to support their claims. Summarily asserted speculations·and conclusions will not suffice. Ortiz v. Examworks. Inc., 470 Mass. 784, 792-93 (2015).
II. STATUTE OF LIMITATIONS
            Defendants move to dismiss on the singular ground that Plaintiffs' claims are barred by the statute of limitations. "Although the question of when [a] cause of action accrued [to commence running of the statute of limitations] typically presents a question of fact, when the facts regarding discovery of harm are undisputed, the question may be decided as matter of law." Vinci v. Byers. 65 Mass. App. Ct. 135, 139 (2005). Thus, where the allegations of a complaint show that the action is barred by the statute of limitations, "[a] motion to dismiss under rule l2(b)(6) is an appropriate vehicle for raising such a defense." Hyman v. Stanford, 105 Mass. App. Ct. 1118, WL 843301, at *2 (Mar. 18, 2025) (Rule 23.0), quoting Epstein v. Seigel, 396 Mass. 278,279 (1985). Here, even construing the factual allegations of the Complaint and the matters of public record in the light most favorable to Plaintiffs, the Court agrees that their claims are time-barred.
            Plaintiffs concede that the applicable statute of limitations is set forth in G.L. c. 260, § 4, which provides that "[a]ctions of contract or tort for malpractice, error or mistake against attorneys ... shall be commenced only within three years next after the cause of action accrues." See Balistreri v. Martin, 96 Mass. App. Ct. 1116, 2020 WL 132516, at *2 (Jan. 13; 2020) (Rule 1:28) ("[R]ecognizing that professional malpractice claims generally arise in contract and in tort from a shared set of facts, the Legislature specifically included both types of claims under the umbrella of G.L. c. 260, § 4. ''). See also Alves v. Cohan. 102 Mass. App. Ct. 1116, 2023 WL
 
                                                            -7-
 
2903418, at *2 (Apr. 12, 2023) (Rule 23.0) (G.L. c. 260,§ 4 applies where "gist of the action" sounds in legal malpractice, regardless of titles plaintiff may have affixed to claims), quoting. Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.,396 Mass. 818, 823 (1986). Plaintiffs' Complaint, filed on June 13, 2025, is thus time-barred if the claims asserted therein accrued before June 13, 2022. Because Plaintiffs' claims, on their face, concern Attorney Scanlon's alleged malpractice in 2019 and 2020, Plaintiffs bear the burden of alleging facts that would take such six-year old claims outside the statutory bar. O'Connor v. Redstone, 452 Mass. 537,551 (2008).
            "The statute of limitations applicable to a legal malpractice claim begins to run when a client 'knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct."' Lyons v. Nutt, 436 Mass. 244,247 (2002), quoting Williams v. Ely. 23 Mass.' 467, 473 (1996). "Appreciable harm" in this context is an "injury, loss or detriment that is capable of being measured or perceived." Frankston v. Denniston, 74 Mass. App. Ct. 366, 374 (2009), quoting Vinci v. Byers, 65 Mass. App. Ct. 135, 139 (2005).
            Plaintiffs contend that their claims against Defendants did not accrue until, at the earliest, April 28, 2023, when the Court entered partial summary judgment in favor of the N&M Plaintiffs. Until that point, Plaintiffs argue, they lacked actual or constructive .knowledge of any appreciable harm arising from Attorney Scanlon's alleged malpractice. In short, Plaintiffs contend that "Massachusetts law defers accrual until merits determination[.]" See Pls.' Opp. at 10. The Court.does not agree.
            Plaintiffs' "construction of what constitutes appreciable harm or loss is too narrow." Frankston, 74 Mass. App. Ct. at 373. It is well settled ''that accrual of a legal malpractice claim does not necessarily depend on the ultimate outcome of the underlying litigation." Id. at 376,
 
                                                            -8-
 
citing Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple. P.C., 394 Mass. 265, 268 (1985). "[I]t is not necessary that the plaintiff client know the full extent of harm or loss or know precisely in what manner and what hannful after-effects flow from the alleged malpractice." Frankston, 74 Mass. App. Ct. at 374. The,plaintiff"need not know that his lawyer was negligent," Lyons, 436 Mass. at 249, nor ''the full extent of its injury for a cause of actionto accrue and for the statute oflimitations to begin running." Taygeta Corp. v. Varian Assocs., 436 Mass. 217,229 (2002). See also Swasey v. Barron, 46 Mass. App. Ct 127, 129 (1999) ("Massachusetts does not require discovery of each of the elements of the cause of action ... before the limitation clock in G.L. c. 260, § 4, starts ticking." [quotations omitted]). Rather, "when the plaintiff has reasonable notice that a certain act has been a cause of harm, the plaintiff has a duty to inquire, and the statute of limitations starts to run." Tallarico v. Tierney, 92 Mass. App. Ct. 1102, 2017 WL 3297707 at *2 (Aug. 3, 2017) (Rule 1:28), citing Passatempo v. McMenimen, 461 Mass. 279, 293-94 (2012). All that is required are facts that "put plaintiff on notice sufficient to trigger some further examination of the [attorney's] conduct." Swasey, 46 Mass. App. at 131. "In the legal malpractice context, [appreciable harm] generally occurs when the client expends legal fees to ameliorate the harm caused by the attorney's error." Haney v. Greenbaum, Nagel. Fisher & Paliotti. LLP. No. 1684CV01633, 2018 WL 3013910, at +5 (Mass. Super. Ct. Apr. 12, 2018) (Ames, J.), citing Frankston.74 Mass. App. Ct. at 375.
            The Appeals Court's decision in Frankston is squarely on point, and lays bare the untimeliness of Plaintiffs' claims. In Frankston, the plaintiff brought a legal malpractice action, asserting inter alia that his former attorney had failed to inform him that the statute of limitations was set to expire on his underlying claims. 7·4  Mass. App. Ct. at 371..The Appeals Court held that the plaintiff's cause of action for malpractice accrued when the defendants in the underlying
 
                                                            -9-
 
action moved for summary judgment on statute of limitations grounds, not when the merits of that defense were ultimately adjudicated. lg,_ at 3 73. The Court reasoned that the summary judgment motion itself "brought to the fore the very issues that underlie[d] the alleged legal malpractice ... and yielded to Frankston the requisite knowledge of, and sufficient notice of, the purported malpractice harm." Id. The Appeals Court further noted that, although the summary judgment motion was denied, the legal fees Frankston incurred in defending the motion and would continue to incur to litigate the issue further constituted "appreciable harm" and triggered a duty of inquiry as to a potential legal error or omission by his fo er counsel. Id. at 375. The fact that the issue remained live (insofar as concerned its ultimate judicial resolution) did not preclude a running of the statute of limitations on the plaintiff's malpractice claims:
"That a case is-ongoing and not finally adjudicated through the trial or appellate stage does not mean that there is no duty of inquiry into the harm and its connection to the attorney's conduct and no accrual of a legal malpractice claim; the risks of a statute of limitations bar on a legal malpractice claim are not left back stage, suspended to the final curtain call."
Frankston, 74 Mass. App. Ct. at 375.
            Thus, and directly contrary to Plaintiffs' central argument in this case, the accrual of a cause of action for legal malpractice is not to led or forestalled until the issuance of an adverse final judgment. The authorities for this proposition in Massachusetts are legion. See, e.g, Lyons, 436 Mass. at 248-49 (cause of action accrued when plaintiff realized his attorneys "didn't know what they were doing,'' not when resulting litigation was resolved); Massachusetts Elec., 394 Mass. at 268 (cause of action accrued when complaint was filed against electric companies, because "[w]hatever the ultimate result of that case ... it was then clear that the electric companies would incur substantial legal expenses in the defense of a claim that was based in part on the alleged negligent conduct of their attorneys"); Murphy v. Smith. 411 Mass. 133, 136
 
                                                            -10-
 
(1991) (neighbor's letter that asserted conflicting legal right to property was sufficient notice of attorney's potential negligence in certifying good record title); Cantu v.·St. Paul Cos., 401 Mass. 5J, 57 (1987) (although extent of harm caused by attorney's failure to give notice to excess insurer would not be known until appeal concluded in underlying case, plaintiff had sufficient notice of harm when he retained another attorney for advice on his personal liability for the judgment); Vinci, 65 Mass. App. Ct. at 140 (malpractice claim accrued once plaintiff knew ' at as a result of [attorney's] advice, [his] position in his divorce case had been negatively affected," even though he "did not yet know the full extent of the harm"); Hyman, 2025 WL 843301, at *2 (plaintiff had notice of appreciable harm sufficient to start limitations clock running where attorneys left plaintiff in the lurch,·without doing any work, even though summary judgment against plaintiff did not enter until months later); Tallarico, 2017 WL 3297707, at *2 (Aug. 3, 2017) (Rule 1:28) (action for malpractice arising from attorney's drafting of promissory note accrued when plaintiff received demand letter seeking full payment of loan, and plaintiff retained new counsel to respond); Haney, 2018 WL 3013910, at *6 (malpractice action accrued where plaintiff "was aware that·[ J firm had erred and he was paying legal fees as a result of this error").[6]
            The parties spill substantial amounts of ink disputing whether Nicosia's demand letter or the filing of the N&M Lawsuit commenced the running of the three-year statute of limitations.[7]
 
--------------------------------------------
 
[6] Plaintiffs' acrobatic efforts to distinguish these cases are noted, but suggest distinctions without a difference that are unpersuasive.
[7] To be sure, when Defendants allegedly counseled Plaintiffs that the Negative Pledge Agreement was unenforceable in 2019 2020, the issue arguably presented an open question of law that would have required Plaintiffs to incur legal expenses to resolve - for instance, through a declaratory judgment action. The costs of such an action would not necessarily constitute expenses to ameliorate the harm caused by the attorney's error. Compare Pelletier v. Chouinard. 27 Mass. App. Ct. 92, 95 (1989) (legal expenses incurred to ameliorate harm cause by negligent attorney is appreciable harm); with Kensington v. Johnson, No. CIV.A. 10-2668-BLSl, 2011 WL 1815623, at *8 (Mass. Super. Ct. Apr. 19, 201I) (Lauriat, J.) (declining to apply rule articulated in Massachusetts Elec., Frankston and Pelletier that statute of limitations runs when legal expenses are first incurred, where record did
 
                                                            -11-
 
But the Court need not resolve such finely parsed issues in order to decide the pending motion. It cannot be gainsaid that Plaintiffs had both actual and constructive notice of appreciable harm arising from Attorney Scanlon's legal advice once that very theory was rejected in three.
successive judicial rulings. See N&M  Trust  VII, No. 2020-J-0129,  slip op. (Mass. App. Ct. Mar.. 19, 2020) (Kinder, J., single justice) (N&M plaintiffs likely to succeed, as  "[n]one of the cases cited" supported Bum's argument); Nicosia, No. 2084CV00218, Dkt. No. 16, slip op. at 1 (Mass. Super. Ct. Sept. 10, 2020) (Sullivan, S., J.) (the N&M plaintiffs' "reasonable likelihood of
success on the merits ... has been established"); Nicosia, No. 2020-J-0453, slip op. (Mass. App. Ct. Oct. 29, 2020) (Wendlandt, J., single justice) ("[T]he cases cited by the defendants do not support the conclusion that the lease provisions at issue ... are unenforceable[,]" and "the trial judge properly adopted the prior single justice's conclusion that the [N&M]-plaintiffs established a likelihood of success on the merits"). In Frankston, the mere filing of an unsuccessful summary judgment motion by an opposing party "sent a strong storm warning of gathering and darkening clouds" sufficient to trigger the running of the statute of limitations. 74 Mass. App. Ct. at 373. Here, Plaintiffs received three separate court decisions that (1) explicitly rejected the legal theory attributed to Attorney Scanlon; and (2) stated that the N&M plaintiffs were likely to prevail in their action. Plaintiffs obviously incurred legal expense in addressing such issues both in this Court and before the Appeals Court, and were thus indisputably on notice that they would incur further expense litigating whether they breached the Negative Pledge Agreement. At the same time, the foregoing judicial decisions plainly prevented Plaintiffs from transferring; assigning or encumbering their interests in the Liquor License, a substantial form of financial and operational
 
--------------------------------------------
 
not indicate that initial expenses were incurred "expressly to repair the harm caused by [attorney's] negligence"). However, the costs Plaintiffs incurred in retaining counsel to defend the License Pledge against N&M's claims to invalidate it could be fairly characterized as such. Regardless, the Court need not rely on the demand letter or the filing of the N&M Lawsuit to conclude that Defendants are entitled to dismissal on time-bar grounds.
 
                                                            -12-
 
harm. There is simply no plausible position that Plaintiffs, upon receipt of any of these three decisions, lacked adequate notice of appreciable harm and the need to examine the potential error of Attorney Scanlon's legal advice. See Swasey, 46 Mass. App. Ct. at 131.[8] As such, Plaintiffs' cause of action accrued no later than (and, indeed, well before) October 2020. The three-year statute of limitations on this claim thus expired in 2023, two years before Plaintiff filed the present action[9].
            Plaintiffs likewise cannot rely on the continuing representation doctrine to rescue their time-barred claims. This doctrine ''tolls the statute of limitations in legal malpractice actions where the attorney in question continues to represent the plaintiff's interests in the matter in question." Frankston. 74 Mass. App. Ct. at 377, quoting Murphy. 411 Mass. at 137. The "obvious and insurmountable obstacle" for Plaintiffs here is that the Complaint does not plausibly suggest any continuing legal representation by Defendants in connection with the N&M Lawsuit or any other matter after 2019 or, at the very latest, 2020..Frankston, 74 Mass. App. Ct. at 377. See Javaras v. LaFortune, 105 Mass. App. Ct. 1142, 2025 WL 2215447, at *2 (Aug. 5, 2025), review denied, 496 Mass. 1112 (2025) (tolling unavailable where attorney's representation ended more than three years before client filed malpractice action).[10] From the
 
--------------------------------------------
 
[8] Although Plaintiffs' counsel insisted at hearing that the injunctive relief affirmed by two different Single Justices  . of the Appeals Court cannot be considered sufficiently "appreciable harm" to trigger the running of the statute of limitations on Bum's legal malpractice claim against Attorney Scanlon, the undersigned takes notice that in opposing the issuance of this very equitable remedy - Plaintiffs asserted the diametrically opposite position in sworn submissions to the Court. During argument, Plaintiffs' counsel made no attempt to explain this glaring inconsistency.
[9] The Supreme Judicial Court's COVID-related orders, which tolled the running of the limitations period on civil claims from March 17, 2020 through June 30, 2020, do not bring Plaintiffs' claims within the limitations period. See SJC's Third Updated Order Regarding Court Operations under the Exigent Circumstances Created by the COVID.. 19 (Coronavirus) Pandemic (July 1, 2020) (Repealed Sept 17,2020); Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 341-42 (2021); Woods v. Hanover Ins. Grp., Inc., 102 Mass. App. Ct. II 16, 2023 WL 2939970, at *2 (Apr. 24, 2023) (Rule 23.0).
[10] Although Plaintiffs' counsel suggested at hearing that his clients might seek leave to amend their Complaint to assert continuing representation by Attorney Scanlon, counsel commendably acknowledged that he presently
 
                                                            -13-
 
outset of the N&M Lawsuit, Plaintiffs were represented by separate counsel. Moreover; even if the Complaint colorably suggested that Attorney Scanlon continued to represent Plaintiffs, a statute of limitations is not tolled once the client has actual knowledge of the attorney's alleged malpractice. See Vinci, 65 Mass. App. ct.'at 140, quoting Lyons, 436 Mass. at 250 ("If the client has such knowledge, then there is no innocent reliance which the continued representation doctrine seeks to protect"). As noted ante, Plaintiffs cannot plausibly claim that they lacked actual knowledge of the malpractice they now allege after receiving decisions from three different judges who expressly concluded that Attorney Scanlon's legal theory was baseless. See Javaras, 2025 WL 2215447, at *2 (client could not justifiably rely on attorney's proclamations that "adverse rulings were wrong and would be corrected on appeal" to toll statute of limitations under continuing representation theory).
            Against this tsunami of countervailing precedent, Plaintiffs cite but a single case; Eck v. Kellem, 51 Mass. App. Ct. 850 (2001). (See Pl.'s Opp., passim.) But Eck provides no refuge here. In Eck. plaintiff alleged that defendant-attorney Kellem had negligently failed to draft a purchase and sale agreement to protect Eck as seller against liability for ha7.ardous waste. Id. at 851-52. When the purchaser subsequently sued him, Eck retained new counsel to defend the suit. Id. at 852. Nonetheless, Kellem continued to participate in the defense, reassuring Eck and successor counsel that the P&S agreement adequately protected Eck and testifying on Eck's behalf at trial. Id.- at 854-55. Indeed, Eck's view counsel attested that he entrusted the entire defense strategy to Kellem. Id.:The Appeals Court concluded that Kellem's substantial involvement in the defense and Eck's Justifiable reliance thereupon, rendered the matter
 
--------------------------------------------
 
possesses no good faith basis for alleging such and would require discovery to establish it. Given that Lesser and Bum are½ of the attorney-client relationship in issue here, and have had every incentive to allege continuing representation on the part of Attorney Scanlon if this were in fact the case, the Court cannot give credence to such a speculative notion in order to defer the dismissal of untimely malpractice claims.
 
                                                            -14-
 
analogous to continuing representation,[11] and accordingly held that similar tolling should apply such that Eck's cause of action against Kellem accrued not upon the filing of the underlying suit but upon the entry of judgment. Id. at 855.
            Eck did not hold, as a general principle, that a cause of action for legal malpractice accrues only upon a merits decision in the underlying suit. To the contrary, subsequent decisions have expressly recognized th holding in Eck as limited to ''the particular circumstances presented" in that case. HDH Corp. v. LaFlamme, 62 Mass. App. Ct. 1106, 2004 WL 2331715, at *2 & n.4 (Oct. 15, 2004) (rejecting Eck as "inapposite" where "[t]here was no suggestion of continuing representation"and pleading in underlying action put plaintiff on notice of prior counsel's error), Accord Frankston, 74 Mass. App. Ct. at 377 n.9 (declining to apply Eck tolling where complaint did not allege that defendant continued to work with plaintiff's new counsel or direct defense of the underlying suit); Lahnston v. Williamson, No. MICV201000368F, 2013 WL 3778150, at *2 (Mass. Super. Ct. July 9, 2013) (Curran, J.), aff'd, 87 Mass. App. Ct. 1120 (2015) (noting that Eck permitted tolling only where defendant attorney convinced subsequent counsel of defense strategy and client "had every good reason to accept, trust, and rely on former and subsequent counsel's entirely aligned position", but concluding that no similar circumstances were present in case before it).
            The matter at bar is on all fours with the  precedents declining  to apply or extend Eck in the manner Plaintiffs urge. There is no allegation that Attorney Scanlon actively directed Plaintiffs' defense of the N&M Lawsuit, reassured Plaintiffs' trial counsel of the defense strategy, or testified at trial on Plaintiffs' behalf. Indeed, there is no allegation that Attorney
 
--------------------------------------------
 
[11] Indeed, Kellen appears to have been continuing to represent Eck in every respect except as counsel of record, an exception obviously designed to facilitate Kellen's appearance as a witness at trial. See Mass.R. Prof. Cond. 3.7 (Lawyer as Witness) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to ea necessary witness .. .")
 
                                                            -15-
 
Scanlon had an active role or involvement of any kind, direct or indirect, in either the N&M Lawsuit or any contemporaneous communication with Plaintiffs or their trial counsel regarding same. In short, the Complaint asserts no facts remotely similar to either a continuing representation or the closely analogous circumstances presented in Eck.
            Plaintiffs' vague assertions that they "relied on [Attorney Scanlon's] advice through the years of litigation" does not plausibly bring this matter within the Eck framework , The Complaint makes clear that Attorney Scanlon provided the legal advice at issue before the N&M Lawsuit was filed and there is no suggestion that this lawyer played any participatory role in that suit. To adopt Plaintiffs' argument, therefore, would allow the very limited exception to swallow the very broad rule. The statute of limitations would continue to be be tolled long after an attorney's representation of (or even communication with) a client had ended, so long as the client professed to be relying upon the attorney's advice in some manner in the underlying litigation. Once again, that is not (nor should be) the law. See Frankston, 74 Mass. App. Ct. at 376-77 & n.9; Javaras, 2025 WL 2215447, at *2.[12]
 
--------------------------------------------
 
[12] At hearing, Plaintiffs' counsel raised a problematic concern in the realm of policy. Namely, to require a plaintiff to sue their lawyer for malpractice before it has been finally adjudged that the lawyer's counsel in fact violated the standard of professional care casts such a client between a rock and a hard place. To beat the running of the limitations clock may often require the client to take legal action against his former lawyer while the legal issue implicating the lawyer's putative malpractice remains live in the underlying litigation. But doing so may compromise the client's ability to continue to defend the lawyer's legal advice/theory in that underlying matter. Much the same kind of concern animates the tolling required in cases of continuing representation, Just as the law should not force clients with mere notice of malpractice to sue the very lawyers who continue to represent them, one might argue that the law should not compel plaintiffs to shoot themselves in the foot by asserting legal negligence claims that undermine their ability to defend the very positions their lawyers counselled them to take in the first place. A thorny problem, to he sure, hut one the undersigned has no reason to think that the numerous courts rejecting "merits finality" as the trigger for malpractice claim accrual failed to consider. On a more practical level, any conflict between the limitations-driven need to sue, on the one hand, and the self-harm resulting from asserting on the record that one's legal position is the product of attorney malpractice, on the other, is readily reconciled through the execution·of a confidential tolling agreement. Through such commonplace agreements, by which a statute of limitations does not run against an unfiled claim so that parties can address themselves without prejudice to related matters, a would-be malpractice litigant is relieved of the Hobson's choice Plaintiffs posit. See Beal Bank, SSB v. Arter & Hadden. LLP, 167 P.3d 666,673 (Cal. 2007) ("The liberal use of tolling agreements and stays in malpractice cases may reduce the impact on the underlying litigation, ensure that plaintiffs do not have their claims prematurely barred, protect defendants' ... interests in "receiving timely notice and avoiding stale claims .·. . , and allow current counsel, to the extent practicable, to continue to work to ameliorate the consequences of any past
 
                                                            -16-
 
            As a final point, and in contrast to Eck, Plaintiffs cannot plausibly. allege that any continued reliance on Attorney Scanlon's advice was reasonable after the legal theory underlying such advice had been rej'ected by courts in three separate rulings.·See Javaras, 2025 WL · 2215447, at 2 (rejecting claimed tolling where plaintiffs reliance on attorney's advice was not reasonable in the face of repeated adverse rulings).[13]
CONCLUSION AND ORDER
            The claims set forth in Plaintiffs' Complaint are time-barred by the controlling statute of  limitations, G.L. c. 260, § 4. For this reason, the Defendants' Motion to Dismiss shall be, and hereby is, ALLOWED.
SO ORDERED.
/s/Robert B. Gordon
Justice of the Superior Court
Dated:
February 24, 2026
 
--------------------------------------------
 
mistakes."[internal quotations omitted]). Accord Erikson v. Renda. 590 S.W.3d 557, 569-70 (Tex. 2019) ("Limitations can yield harsh consequences ... [but] [e]ven without equitable tolling, malpractice litigants ... have options to ensure their claims are not eliminated by the passage of time. Tolling agreements provide advantages that make them attractive to both client and counsel, and ...  have the benefit of ensuring an attorney has timely notice of a legal-malpractice claim, so evidence may be preserved and the attorney afforded a fair opportunity to mount a defense.").
[13] For the same reasons, this case is distinguishable from Spilios v. Cohen, 38 Mass. App. Ct. 338 (1995), cited in Pls.' Opp. at p. 8. In that matter, "the defendant continued to represent the wife [through the trial], 'a decisive fact,' which '[brought] the case within the continuing representation doctrine[.)"' Swasey v. Barron, 46 Mass. App. Ct. 127, 132 (1999), quoting Spilios, 38 Mass. App. Ct. at 341. Further, the plaintiff in Spilios had not been presented with multiple adverse rulings on the matter at issue which, in the case at bar, provided Plaintiffs with actual and constructive notice that Attorney Scanlon's advice had caused them appreciable harm. Cf. Frankston. Javaras. supra.